S. ASHAR AHMED (SBN 256711)
MEGHAN E. MCCORMICK (SBN 283853)
SANA ABBASI (SBN 303380)
**INFINITY LAW GROUP LLP**
1020 Aileen Street
Lafayette, CA  94549
Telephone:      (925) 732-1188
Facsimile:      (415) 426-3581
Email: aahmed@infinitylawca.com
Email: mmccormick@infinitylawca.com
Email: sabbasi@infinitylawca.com

Attorneys for Plaintiff,
PORTAL AI, INC.

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PORTAL AI, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>MOHAMMAD NAANAA, an individual and MARIIA NOVOSAD, a/k/a MARIE NOVOSAD, an individual,<br><br>Defendants. | CASE NO.:<br><br>**VERIFIED COMPLAINT FOR:**<br>**Count I – Patent Infringement in Violation of 35 USC § 271;**<br>**Count II – Inducement of Patent Infringement;**<br>**Count III – Breach of Contract;**<br>**Count IV – Fraudulent Concealment Cal. Civ. Code §§ 1709-1710;**<br>**Count V – Civil Conspiracy;**<br>**Count VI – Conversion;**<br>**Count VII – Aiding and Abetting Conversion;**<br>**Count VIII – Misappropriation of Trade Secrets 18 USC § 1836-1839 et. seq.;**<br>**Count IX - Breach of Fiduciary Duty;**<br>**Count X – Civil Claim for Violation of Comprehensive Computer Data Access and Fraud Act, Cal Pen Code §502;**<br>**Count XI - Unfair Competition in Violation of Cal Bus & Prof Code § 17200** |

Plaintiff, PORTAL AI, INC. ("Portal") by and through its undersigned attorneys, hereby asserts and claims as follows:

## PARTIES

1.    Plaintiff, Portal, is a corporation formed under the laws of the State of Delaware, with a principal place of business in Redwood City, California.

2.    Defendant Mohammad Naanaa ("Naanaa") is a resident of Santa Monica, California.

3.    Defendant Mariia Novosad, a/k/a Marie ("Novosad") is a resident of Santa Monica, California.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over this action pursuant to 28 USC § 1338, because this action arises under the patent laws of the United States as well as the Defense of Trade Secrets Act.

5.    This Court has supplemental jurisdiction over the related state law claims pursuant to 28 USC § 1367, as those claims form part of the same case or controversy under Article III of the United States Constitution.

6.    This Court has personal jurisdiction over both Naanaa and Novosad pursuant to Rule 4 (k) (1) (A) of the Federal Rules of Civil Procedure, as both defendants are residents of the State of California.

7.    Venue is proper in this Court pursuant to 28 USC § 1400(b), as this case involves patent infringement, and Defendants Naanaa and Novosad reside in this District.

## STATEMENT OF FACTS

8.    Portal AI develops personal artificial-intelligence agents: each subscriber gets a personal AI assistant — reachable through ordinary messaging apps such as Telegram and iMessage — that accumulates a private, lifelong memory of the subscriber and performs tasks for them. The company's patented technology covers the underlying engine: breaking a user's request into sub-tasks, selecting and ranking which specialized AI 'worker agents' should handle each part, enriching the request with the user's context, and verifying the agents' work.

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

Plaintiff's product is built on a private memory layer ('Nexus') that accumulates each subscriber's history, on top of which Plaintiff sells subscriptions and one-time products. The technology was developed over roughly two to three years, with patent priority dating back to 2023. That accumulated private memory — which grows with use and cannot be obtained by copying source code — is what keeps subscribers and what a competitor cannot replicate without Plaintiff's data."

9.    The initial building of the agent's memory is the phase of the service that is most costly to Plaintiff because of the amount of prepaid AI computing capacity that is burned in doing so. Once the memory is built, it is that accumulated memory that makes the product stick (i.e., incentivizes a subscriber to continue to use Plaintiff's product).

10.    Plaintiff owns six issued United States patents, with priority dating to September 2023, and a further application pending. Five had issued during Defendants' conduct; the sixth (No. 12,640,924 B2)(letter a. below) issued on or about May 26, 2026. The Patent No., Title, and Legal Description for each patent numbers are as follows:

a.    Patent No. US 12,640,924 B2 ("Methods and Systems for Enhancing a Context for Use in Processing a User Request"); Covers enhancing the context used to process a user request by drawing on the user's interaction history — recording the user's past requests, the agent's responses, and the user's feedback; summarizing and storing that history for fast retrieval; and, for each new request, identifying its intent, retrieving the most relevant past material by similarity, and adding it to the request to produce an 'enhanced context;

b.    Patent No. US 12,407,510 B2 ("Methods and Systems for Ranking a Plurality of Worker Agents Based on a User Request"); Covers ranking worker agents using request-specific criteria, metrics, relevance, performance, and other factors to determine the best agent for a task.

c.    Patent No. US 12,395,337 B2 ("Methods and Systems for Enhancing a Context for Use in Processing, by a Plurality of Artificial Intelligence Agents, a Request"); Covers context-enhanced multi-agent processing, including selecting worker agents,

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

processing request parts, extracting relevant context, and augmenting later request parts with that context;

d.      Patent No. US 12,265,856 B1 ("Methods and Systems for Identification and Semantic Clustering of Worker Agents for Processing Requests") Covers identifying worker agents, tracking availability, computing drift/relevance metrics, clustering agents by semantic capability, and selecting suitable agents;

e.      Patent No. US 12,260,005 B1 ("Methods and Systems for Verifying a User Agent"); Covers verifying a user agent using predefined requests, embeddings, similarity criteria, query-plan generation, and approval logic;

f.      Patent No. US 12,238,213 B1 ("Methods and Systems for Verifying a Worker Agent"); Covers verifying a worker agent by reviewing its capability description, generating test request-output pairs, comparing actual outputs to expected outputs, and approving or rejecting the worker agent.

11.     Plaintiff also has a patent application pending with the United States Patent and Trademark Office: Publication No. 2025/0274284 A1;Application No. 19/083,597 ("Methods and Systems for Query Decomposition, Agent Ranking, and Execution of Selected Agents from a Plurality of Agents"); Covers decomposing a user request into sub-tasks, identifying candidate worker agents, ranking them, assigning sub-tasks, and returning results.

### Defendant Naanaa

12.     Defendant Naanaa is Plaintiff's former employee who served as its Chief Technology Officer ("CTO"). Plaintiff's CEO, Treasurer, and Secretary is Volodymyr Panchenko.

13.     As Plaintiff's CTO, Naanaa had access to Plaintiff's proprietary and confidential information, including its patented technology.

14.     Naanaa entered into a Confidentiality and Proprietary Rights Agreement with Plaintiff on or around August 19, 2024 ("CPR Agreement") (attached hereto as **Exhibit A**).

15.     Under this agreement, Naanaa agreed to the following:

a.      Not to use or disclose Confidential Information, including but not limited to

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

**INFINITY LAW GROUP LLP**
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

confidential, secret, and proprietary documents, materials, data, and other information in tangible and intangible form, of and relating to Plaintiff and its businesses and existing and prospective customers, suppliers, investors and other associated third parties, and that disclosure of Confidential Information will cause irreparable harm for which remedies at law will not be adequate;

b.      That any Confidential Information developed by Mr. Naanaa in the course of his employment with Plaintiff shall be subject to the same terms and conditions of the Agreement as if Plaintiff furnished the same Confidential Information in the first instance;

c.      Not to access, use, or remove any Confidential Information except as required in the performance of his authorized employment duties;

d.      That the agreement shall continue during and after Mr. Naanaa's employment.

e.       That all technology, inventions, discoveries, ideas, or other work product of any nature that Naanaa created individually or jointly while employed by Plaintiff that relate to Plaintiff's business, research, or development, as well as any rights in and to trade secrets, patents, and other intellectual property rights, are the sole and exclusive property of Plaintiff.

16.      The proprietary rights section of the Agreement further specified that "Work Product includes, but is not limited to, Employer information, including plans, publications, research, strategies, techniques, agreements, documents, contracts, terms of agreements, negotiations, know-how, computer programs, computer applications, software design, web design, work in progress, databases, manuals, results, developments, reports, graphics, drawings, sketches, market studies, formulae, notes, communications, algorithms, product plans, product designs, styles, models, audiovisual programs, inventions, unpublished patent applications, original works of authorship, discoveries, experimental processes, experimental results, specifications, customer information, client information, customer lists, client lists manufacturing information, advertising information and sales information."

17.      The Agreement also contained a non-disparagement clause that stated, "The

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

Employee agrees and covenants that the Employee will not make, publish, or communicate defamatory or disparaging remarks, comments, or statements concerning any of the Employer's products or services. The Employee agrees and covenants that the Employee will not at any time make, publish, or communicate to any person or entity or in any public forum maliciously false, defamatory, or disparaging remarks, comments, or statements concerning the Employer or its businesses, or any of its employees, officers, and existing and prospective customers, suppliers, investors and other associated third parties.

18. Moreover, pursuant to the Agreement, Naanaa agreed "that [Portal's] Confidential Information and [Portal's] ability to reserve it for the exclusive knowledge and use of the [Portal] is of great competitive importance and commercial value to [Portal], and that improper use or disclosure of the Confidential Information by [Naanaa] *will cause irreparable harm to the [Portal]*, for which remedies at law will not be adequate. In the event of a breach or *threatened breach* by [Naanaa] of any of the provisions of this Agreement, the Employee hereby consents and agrees that [Portal] shall be entitled to seek, in addition to other available remedies, a *temporary or permanent injunction* or other equitable relief against such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that monetary damages would not afford an adequate remedy, and without the necessity of posting any bond or other security. (Ex. A, p. 8, section 6 [emphasis added].)

19. Defendant Naanaa was terminated from Plaintiff Portal AI for cause effective May 21, 2026.

20. Plaintiff has evidence that Naanaa began pursuing his own company in direct competition with Plaintiff as early as mid-March 2026, while he was still employed at Portal. Naanaa has referred to this company as "01Labs,"[1] and he registered the domain 01labs.ai on May 22, 2026.

21. Mr. Panchenko has since discovered that Naanaa has blatantly and continuously violated and continues to violate multiple provisions of the Confidentiality and Proprietary Rights Agreement.

---

[1] Naanaa also referred to his solo venture as "Zero One Labs" and "Zero-One-Labs."

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

22.     Specifically, Naanaa has violated the Confidentiality and Proprietary Rights Agreement in the following manner:

a.     He has used profiles developed at Portal using a program called Cursor for his own business purposes, including the promotion of his business.

b.     He took four of Plaintiff's confidential profile files, developed by Plaintiff with Plaintiff's technology and built a 629-line negotiation playbook from them. Naanaa used this playbook against Mr. Panchenko in an equity negotiation that Naanaa initiated at the same time he was developing his own competing company. Plaintiff's proprietary methods remain in Naanaa's hands.

c.     He provided approximately forty of Plaintiff's proprietary psychological-profiles, generated with Plaintiff's confidential methodology to individuals outside the company.

d.     He has represented to investors that he was the sole founding partner of Plaintiff, and he represented he was the owner of five of Plaintiff's patents.

e.     He shared proprietary information concerning Plaintiff's product and infrastructure configuration — including its agent-hosting architecture, billing and subscription configuration, internal algorithms, and customer/creator program structure with Co-Defendant Mariia Novosad while he was still employed at Portal.

f.     Naanaa collaborated with Novosad, who is Naanaa's girlfriend and a social media influencer, to make false and disparaging statements regarding Plaintiff's data security in an effort to drive subscription users away from Plaintiff and to 01Labs instead, where Naanaa intends to use Plaintiff's proprietary information and technology, including its patents, for his own business.

g.     On April 22, 2026, Naanaa accessed Mr. Panchenko's confidential files containing trade secrets and covertly extracted Plaintiff's core "Nexus IP." Nexus is Plaintiff's internal knowledge engine — the proprietary system that converts each user's accumulated history into a structured, searchable private memory (hundreds of thousands of indexed entries), with privacy controls and retrieval logic.

PATENT INFRINGEMENT IN VIOLATION OF 35 USC § 271; ETC.

h.   Naanaa used Plaintiff's confidential information relating to its investors or potential investors to raise capital for his own business. Specifically, while still an employee for Plaintiff, Naanaa pitched 01Labs to accelerator and fellowship programs — including Y Combinator, Neo, and Z Fellows — and to venture-capital investors — including Fellows Fund — and, on information and belief, to others, using Plaintiff's ARR, customer count, and retention data as his own.

23.   Mr. Naanaa's above-listed conduct has caused and continues to cause Plaintiff to suffer irreparable harm.

### Defendant Novosad

24.   Novosad is Naanaa's girlfriend and a social media influencer.

25.   Naanaa and Novosad collaborated in a scheme to divert Plaintiff's subscription fees and subscribers at Plaintiff's expense.

26.   Upon information and belief, Novosad recruited large numbers of subscribers with the intention that they would consume Plaintiff's costly infrastructure and prepaid AI-provider credits before Defendants diverted Plaintiff's subscribers to the competing venture Naanaa was in the midst of developing, 01Labs.

27.   Plaintiff collected subscription fees from subscribers using a payment app called Stripe ("Stripe Subscribers").

28.   Novosad had a large social media presence and audience.

29.   In collaboration with Naanaa, Novosad leveraged her social media influence and network to recruit subscribers to Plaintiff's service.

30.   Naanaa facilitated the servicing of these subscriptions from within Plaintiff's company.

31.   Novosad collected subscription fees from some of these subscribers using a payment method called Tribute ("Tribute Subscribers") and retaining those fees rather than remitting them to Plaintiff.

32.   Naanaa provided Tribute Subscribers direct access to Plaintiff's technology, which they otherwise would not have had. In other words, together and in collaboration with

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

each other Naanaa and Novosad collected money from subscribers in exchange for access to Plaintiff's patented technology.

33.     Plaintiff and its CEO, Mr. Panchenko, did not have access to the Tribute account Novosad used to collect subscription fees. In fact, neither Novosad nor Naanaa disclosed to Mr. Panchenko that Novosad was collecting subscription fees using Tribute.

34.     Novosad was never an employee of Plaintiff. Subscribers Novosad recruited and from whom she collected payment were only able to access Plaintiff's service with the assistance of Naanaa. Without Naanaa's assistance in accessing Plaintiff's service, Novosad would not have been able to sell subscriptions.

35.     Over the course of at least two and a half months, Novosad collected thousands of dollars from Tribute Subscribers, and Naanaa facilitated the Tribute Subscribers use of Plaintiff's proprietary technology and service without Plaintiff's knowledge or consent.

36.     Upon information and belief, Novosad shared the subscription fees she collected using Tribute with Naanaa.

37.     To date, Defendants have not provided Plaintiff with any of the revenue Novosad collected from Tribute Subscribers.

38.     In addition to the Tribute subscribers, Novosad recruited a large population of Stripe Subscribers while Naanaa was in the midst of developing his own solo venture 01Labs. She subsequently assisted Naanaa in diverting those subscribers and their data files, built with Plaintiff's costly infrastructure and prepaid AI-provider credits, to a competing company, presumably 01Labs, just as those subscribers were poised to become profitable to Plaintiff.

39.     Naanaa used Plaintiff's resources and costly infrastructure to service the subscriptions that Novosad had recruited, some of whom were paying subscription fees to Novosad rather than Plaintiff.

40.     The subscribers recruited by Novosad accounted for 79.1% of Plaintiff's infrastructure usage between March and May of 2026. That infrastructure was intended to last six to twelve months.

41.     In total, Novosad's cohort of subscribers, a portion of which were paying

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

subscription fees to Novosad instead of Plaintiff, cost Plaintiff roughly $316,000–458,000 of of prepaid AI-provider credits, intended to last 6–12 months, in seventy (70) days.

42. Following the termination of these subscriptions, Novosad made and continues to make numerous public statements — including but not limited to posts on social media platforms, videos, and other online channels — stating the quality and safety of Plaintiff's client data could no longer be ensured due to Mr. Naanaa no longer having access to the accounts. Novosad also instructed customers to export all data in a format that would allow it to be easily transferred to a competing company.

43. In fact, Novosad published a data-export prompt, which is a ready-made command that a user can copy and paste, which in turn creates the bot package containing their entire personal archive (profile, memories, diaries) into one file to take to a competitor.

44. The prompt reflects Portal-insider knowledge of the file structure, indicating its creation and publication was a joint act.

45. The prompt Novosad published has been pasted by no less than seventy-three (73) users and at least twenty-eight (28) archives have been created.

46. The use of the prompt and the archiving/downloading that has occurred since Naanaa was terminated is a direct and proximate result of Naanaa's blatant violation of the Confidentiality and Proprietary Rights Agreement ("CPR Agreement") and Novosad's false and defamatory statements regarding Plaintiff's lack of security and ability to keep subscriber data safe. Some subscribers who have cancelled their subscriptions after exporting their data with the prompt Novosad published cited Novosad's messaging on social media as the reason for terminating their subscription.

47. As a direct and proximate result of Defendants' above-described conduct, Plaintiff has suffered substantial economic damages in the form of lost subscription revenue, loss of startup capital and other resources, loss of costly infrastructure and prepaid credits. Additionally, Plaintiff has suffered reputational harm that cannot be quantified monetarily.

///

///

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

## CLAIMS FOR RELIEF

### Count I – Patent Infringement in Violation of 35 USC § 271

(against Defendants Naanaa and Novosad)

48.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 47 as if fully set forth herein.

49.     Patent infringement occurs when an individual without authority, makes, uses, offers to sell, or sells a patented invention within the United States.

50.     Defendant Naanaa and Novosad infringed Plaintiff's patents when they provided access to Plaintiff's patented technology in exchange for a subscription fee. The service subscribers received used or incorporated technology covered by the five patents set forth in Paragraph 10 above.

51.     Naanaa granted Novosad's subscribers direct access to Plaintiff's patented technology and service without Plaintiff's consent.

52.     Novosad knew she was collecting subscription fees without Plaintiff's authorization and that Naanaa was providing access to Plaintiff's patented technology without authorization in exchange for the subscription fees she was collecting.

53.     Upon information and belief, Naanaa has used and continues to use Plaintiff's patented technology for his own business without Plaintiff's authorization.

54.     Plaintiff has suffered economic damages by Naanaa's infringement.

55.     As a direct and proximate result of Naanaa's and Novosad's infringement, Plaintiff suffered damages in the form of lost subscription revenue and loss of costly infrastructure resources used to support the subscriptions Novosad solicited.

### Count II – Inducement of Patent Infringement

(against Defendant Novosad)

56.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

57.     Defendant Novosad knowingly induced infringement of Plaintiff's patents.

58.     Novosad collaborated with Naanaa in a scheme to use Plaintiff's patented

technology to service paid subscriptions that Novosad recruited through her social media influence.

59.     Novosad knew that Naanaa was using Plaintiff's patented technology without authorization to service the subscriptions of users from whom she was collecting subscription fees.

60.     Novosad actively encouraged and facilitated Naanaa's use of Plaintiff's patented technology by recruiting subscribers for services that required use of the patented technology.

61.     But for Naanaa's access to Plaintiff's technology and his facilitation of subscriber use, Novosad would not have had access to Plaintiff's service and would not have been able to recruit subscribers.

62.     Novosad also induced subscribers from whom she was collecting subscription fees to use Plaintiff's patented technology without Plaintiff's consent.

63.     Novosad led subscribers to believe they were paying Plaintiff in exchange for authorized use of Plaintiff's technology. These subscribers did not know and could not have known Novosad was not transferring subscription fees to Plaintiff and that the use of Plaintiff's patented technology was not authorized.

64.     Novosad's actions caused Naanaa and individuals making subscription payments to Novosad to infringe Plaintiff's patents.

65.     But for Novosad's recruitment of subscribers and her collaboration with Naanaa, the infringement would not have occurred or would not have occurred to the same extent.

66.     Novosad knew or should have known that Plaintiff's service utilized patented technology that neither she, Naanaa, nor subscribers were authorized to use without Plaintiff's consent or authorization.

67.     As a direct and proximate result of Novosad's efforts to cause Naanaa and subscribers unauthorized use of Plaintiff's patented technology, Plaintiff suffered significant economic damages in the form of lost subscription revenue, loss of startup capital and other resources, and loss of costly infrastructure.

///

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

## Count III – Breach of Contract

### (Against Defendant Naanaa)

68.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 67 as if fully set forth herein.

69.     The CPR Agreement that Naanaa signed on August 19, 2024 was a valid written contract with Plaintiff.

70.     Pursuant to the CPR Agreement, Naanaa agreed not to use Plaintiff's confidential information and proprietary technology for his own benefit or for any purpose other than Plaintiff's business.

71.     Naanaa's employment with Plaintiff was conditioned on his acceptance of the terms of the CPR Agreement.

72.     Naanaa breached the terms of the CPR Agreement while employed by Plaintiff as set forth above in paragraph 22.

73.     Naanaa used and is using technology covered by Plaintiff's six patents (listed in Paragraph 10 above) for his own business, 01Labs, in direct violation of the CPR Agreement.

74.     Naanaa violated provision 1. (b)(i)(C) of the CPR Agreement, which prohibited accessing, using, or removing Plaintiff's Confidential Information (as defined in the Agreement) for reasons other than the performance of his employment duties to Plaintiff.

75.     Specifically, Naanaa covertly extracted Plaintiff's confidential profiles, and proprietary algorithms, without consent and for purposes other than those of Plaintiff's business in violation of the CPR Agreement. Naanaa then used those profiles for his own business purposes and economic gain.

76.     On April 22, 2026, Naanaa extracted Plaintiff's core Nexus, which were both confidential and proprietary Work Product, as defined by the CPR Agreement. Plaintiff's Nexus is its core trade secret. Nexus' is Plaintiff's private memory engine — like a perfectly organized private filing cabinet that remembers a subscriber's whole history and hands the system the right page instantly; the longer you use Portal, the more it knows, and the harder it is to leave.

77.     Naanaa also used Plaintiff's resources and infrastructure to service subscriptions

recruited by Novosad, in violation of both the CPR Agreement and the Employee Handbook Naanaa signed on December 14, 2024 and agreed to comply with.

78.   Plaintiff was damaged by Naanaa's multiple breaches.

79.   Naanaa's use of Plaintiff's proprietary information for his own business venture and fundraising in direct competition with Plaintiff caused Plaintiff economic harm in the form of loss of potential investment capital and loss of its competitive advantage. Plaintiff also lost a significant amount of its costly infrastructure due to Naanaa granting Novosad's subscribers access to that infrastructure.

80.   Plaintiff suffered reputational harm and lost business opportunities as a result of Naanaa's breach.

## Count IV – Fraudulent Concealment
## Cal. Civ. Code §§ 1709-1710
### (against Defendant Naanaa)

81.   Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 80 as if fully set forth herein.

82.   As the Chief Technology Officer, Naanaa owed Plaintiff a fiduciary duty.

83.   While employed by Plaintiff, Naanaa intentionally failed to disclose the following material facts to Plaintiff with the intent to deceive Plaintiff:

a.   That while he was still employed by Plaintiff, Naanaa began pursuing a company of his own, 01Labs, a company Naanaa intended and intends to directly compete with Plaintiff;

b.   That while he was still employed by Plaintiff, he was using company time and resources to raise capital for his own business venture rather than raise capital for Plaintiff;

c.   That while still an employee for Plaintiff, Naanaa pitched 01Labs to at least six different accelerators and venture capitalists, including but not limited to Y Combinator, a16z Speedrun, Neo, Z Fellows, OCV, and Fellows Fund and that in doing so, he used Plaintiff's confidential metrics, including annual recurring revenue, customer count, and

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

**PATENT INFRINGEMENT IN VIOLATION OF 35 USC § 271; ETC.**
14

retention data, as that of his own company;

d.      That in pitching his own company to investors, Naanaa represented that Plaintiff's five patents and pending patent application belonged to him;

e.      That in pitching investors, Naanaa represented himself as the sole founder of Plaintiff;

f.      That his girlfriend, Novosad, was collecting subscription fees for Plaintiff's service, and Naanaa, was in turn, granting subscribers access to Plaintiff's service and patented technology without Plaintiff's knowledge or consent;

g.      That he had conspired with Novosad to use her social network to recruit subscribers to Plaintiff's service, intending to divert them to a competing company (presumably 01Labs) after they had consumed Plaintiff's infrastructure and AI-provider credits and were just becoming or about to become profitable.

h.      That in mid-March of 2026, Naanaa accessed and modified Plaintiff's 'founders.json' adding Novosad, which allowed her founder-level access/payout eligibility in the app. Plaintiff never employed Novosad.

i.      That while employed by Plaintiff, Naanaa covertly extracted Plaintiff's full Nexus, which is Plaintiff's core trade secret, using a Cursor session on a computer owned by Mr. Panchenko.

j.      That at the same time he was trying to renegotiate his equity stake in Plaintiff, Naanaa was preparing to make a solo exit.

84.     Plaintiff was not aware of any of the above facts in the previously stated paragraph, subsections (a-j)until at least May 21, 2026.

85.     Naanaa's intention to conceal material information from his employer, Plaintiff, as well as his once friend and business partner, Mr. Panchenko, is evidenced by his own statements, which Plaintiff eventually discovered in Naanaa's memory files, including but not limited to the following:

a.      On at least three occasions between April 10 and April 13, 2026, Naanaa's AI

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

agent's strategy notes, which he directed and adopted stated, "Vlad [2] doesn't know the Anthropic relationship nuance." [3]

b.      On April 14, 2026, in a deeply private concealment marker (standing instructions he wrote into his AI agent's memory on company servers), Naanaa wrote, "DEEPLY PRIVATE – never share co-founder tension or solo founder considerations externally," and DEEPLY PRIVATE – "never share with Vlad's agent Alice or anyone else." This instruction was repeated in multiple places.

c.      On May 7, 2026, Naanaa's internal strategy note stated, "01Labs bomb hasn't been dropped yet."

d.      On May 11, 2026, he wrote, "Vlad does NOT know about the YC application or 01Labs." [4]

86.      Had Mr. Panchenko or others acting as agents for Plaintiff, become aware that Naanaa was concealing the above facts and information, Naanaa would have been terminated immediately, as Naanaa's patent infringement and false representations to investors were, and continue to be, damaging to Plaintiff.

87.      Had Mr. Panchenko or others acting as agents for Plaintiff, become aware that Naanaa was concealing the above facts and information, Plaintiff would have taken steps to ensure its costly infrastructure and prepaid AI-provider credits were not consumed by the subscribers Novosad recruited.

88.      Plaintiff has lost business opportunities, as Naanaa's false representations to investors caused Plaintiff reputational harm and diverted investors away from Plaintiff. By losing these potential investors, Plaintiff suffered irreparable harm that cannot be quantified with money damages alone.

89.      As a direct and proximate result of Naanaa's fraudulent concealment, Plaintiff

---

[2] Mr. Panchenko is often referred to by himself and others as Vlad.

[3] Upon information and belief, the nuance referenced is that Naanaa had positioned himself as the sole holder of Plaintiff's relationship with Anthropic — Plaintiff's most strategic partner — keeping Panchenko out of those conversations while planning his exit.

[4] Y Combinator is another accelerator that Naanaa applied to for funding for his own company while still employed by Plaintiff.

**PATENT INFRINGEMENT IN VIOLATION OF 35 USC § 271; ETC.**

16

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

suffered economic harm in the form of lost subscription revenue collected using Tribute. Plaintiff suffered and continues to suffer lost subscription revenue from subscribers Novosad diverted and continues to divert from Plaintiff, as well as the costly infrastructure and prepaid AI-provider credits consumed by Novosad's subscribers.

## Count V – Civil Conspiracy

### (against all Defendants)

90. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 89 as if fully set forth herein.

91. Defendants formed and operated a conspiracy.

92. Naanaa and Novosad agreed to collaborate in a scheme to divert subscription fees from a sub-set of subscribers to Novosad using Tribute.

93. Naanaa and Novosad also agreed to collaborate in a scheme to divert subscribers away from Plaintiff after they had consumed significant infrastructure resources and pre-paid AI provider credits. They did so knowing that this would be particularly costly and damaging to Plaintiff because of the resources that subscribers consumed during the initial phase of use building their AI agent's memory.

94. In the case of Tribute Subscribers, these substantial resources were consumed from Plaintiff while subscription fees that would help defray the cost of those resources were diverted to Novosad.

95. Naanaa and Novosad agreed that Novosad would use her social media influence to recruit subscribers, some of whom would pay subscriber fees directly to Novosad, rather than Plaintiff, using Tribute.

96. Naanaa and Novosad agreed that Naanaa would facilitate servicing of the subscriptions, particularly those of Tribute Subscribers, using Plaintiff's resources and infrastructure.

97. Naanaa and Novosad agreed that Novosad would retain subscription fees collected from Tribute Subscribers rather than remit them to Plaintiff.

98. Defendants agreed to work together to divert subscribers Novosad recruited away

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

from Plaintiff after those subscribers consumed significant amounts of Plaintiff's infrastructure resources as their AI agent's memory was being built in the initial phase of use.

99. Defendants engaged in wrongful conduct in furtherance of their conspiracy.

100. Novosad recruited Tribute and Stripe Subscribers using her social media influence.

101. Novosad retained fees collected from Tribute Subscribers for herself, knowing they would be consuming Plaintiff's resources.

102. Naanaa facilitated Tribute Subscribers' consumption of those resources knowing that the subscription fees they paid were not being remitted to Plaintiff.

103. The users Novosad recruited, particularly the Tribute Subscribers, could only access and be serviced on Portal with Naanaa's provisioning.

104. By at least spring of 2026, as Naanaa was plotting his exit from Portal to pursue his own competing solo venture, Naanaa and Novosad conspired to divert Plaintiff's subscribers away from Plaintiff, presumably so they could eventually be transferred to Naanaa's competing company.

105. When Plaintiff learned subscription fees were being diverted to Novosad, and Naanaa admitted Novosad had retained subscription fees she collected using Tribute on or around May 21, 2026, Plaintiff terminated all subscriptions that used Tribute to make payment.

106. Around this same time, Novosad took to social media and made false and defamatory statements regarding Plaintiff. Specifically, on May 22-23, 2026, she used her own public Telegram channel (@novosadmarie) and stated the following: "The cofounder cut off …my boyfriend (the creator of the bot) …I can no longer guarantee the quality or safety of the product." This post had at least 7,960/4,580 views.

107. On May 27, 2026, Novosad posted on her channel a ready-made data-export prompt (a ready-made command) that received at least 4,580 views and told users to use that prompt to dump their full profile, memory, and diaries into a .txt file "to hand to another assistant or neural network." In other words, to hand to one of Plaintiff's competitors.

108. The data-export prompt Novosad published was the tool that provided Plaintiff's

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

users with the ability to package their AI Agent's memory—the beneficial product built with Plaintiff's costly resources—and transfer it to a competing company. Without the data-export prompt, a user that left Plaintiff would lose the memory he or she built over time using Plaintiff's technology and resources.

109. The data-export prompt Novosad published so Plaintiff's users could export their data, could only be created with confidential and proprietary information that only Plaintiff's employees would be able to access. Novosad did not have the information or knowledge needed to write the data-export prompt herself.

110. Plaintiff suffered damages as a result of the wrongful conduct.

111. As a result of Defendants' conspiracy, Plaintiff lost seventy-nine percent of its costly artificial intelligence tokens, intended to last six to twelve months, in the course of one to two months as well as what were intended to be long-term subscribers (profitable assets).

112. Plaintiff also lost subscription revenue that should have been paid to Plaintiff.

113. In addition, Plaintiff suffered reputational harm as a result of Novosad's publicly made false statements regarding Plaintiff's data security, which cannot be quantified monetarily.

## Count VI - Conversion

### (against Novosad)

114. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 113 as if fully set forth herein.

115. Plaintiff had the right to subscription fees collected from subscribers using its technology and infrastructure.

116. Novosad substantially interfered with Plaintiff's collection of subscription fees by knowingly and intentionally collecting those fees using Tribute and keeping them for herself.

117. Novosad did not provide Plaintiff with access to the Tribute account where Plaintiff's subscription fees were being collected, and she did not remit the subscription fees to Plaintiff.

118. Plaintiff did not consent to Novosad collecting and retaining subscription fees from Tribute Subscribers.

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

119. As a direct and proximate result of Novosad's conduct, Plaintiff suffered economic damages.

## Count VII – Aiding and Abetting Conversion

### (Against Defendant Naanaa)

120. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-119 as if fully set forth herein.

121. The subscription fees Novosad collected from Tribute Subscribers were paid in exchange for use of Plaintiff's service.

122. Naanaa was an active participant in Novosad's scheme, as he personally granted and comped the Tribute subscribers' access on Plaintiff's infrastructure, deployed Novosad's monetization bundle to them, and integrated the off-platform payment rail — while concealing the resulting cost from Plaintiff's records.

123. Naanaa provided Tribute Subscribers with access to Plaintiff's services without Plaintiff's knowledge or consent.

124. Naanaa knew Novosad was retaining the subscription fees she collected from Tribute Subscribers.

125. As a direct and proximate result of Naanaa's aiding and abetting of Novosad's conversion, Plaintiff suffered economic damages in the form of lost subscription fees.

## Count VIII – Misappropriation of Trade Secrets
## 18 USC § 1836-1839 *et. seq.*

### (against Defendant Naanaa)

126. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 126 as if fully set forth herein.

127. Plaintiff possesses trade secrets, including but not limited to the following: (1) the Nexus engine — its structured-memory schema, retrieval/ranking logic, and tuned weights; (2) the source code for the orchestration engine; and (3) the aggregated, structured customer dataset.

128. The above listed technology/information derives independent economic value

from not being generally known to other persons who can obtain economic value from its disclosure or use. Specifically, these trade secrets are essential to the service that Plaintiff provides to subscribers for a fee.

129.   Plaintiff's subscribers are located across the United States as well as in foreign countries.

130.   Plaintiff also owns several patents related to its technology.

131.   Plaintiff's proprietary technology involves providing subscribers with a personal AI assistant — reachable through ordinary messaging apps such as Telegram and iMessage — that accumulates a private, lifelong memory of the user and performs tasks for them. The company's patented technology (six patents described in paragraph 10 above) is utilized and incorporated into the underlying engine: breaking a user's request into sub-tasks, selecting and ranking which specialized AI 'worker agents' should handle each part, enriching the request with the user's context, and verifying the agents' work.

132.   The technology underlying the service Plaintiff provides in exchange for a fee was developed over the course of two to three years and could not operate without Plaintiff's patented technology.

133.   Plaintiff has taken reasonable measures to keep its proprietary information secret, not the least of which is its CPR Agreement that employees, including Naanaa, were required to sign.

134.   Upon information and belief and based on evidence Mr. Panchenko has uncovered since his departure, Naanaa's solo venture, 01Labs, is or will be in direct competition with Plaintiff.

135.   As set forth in detail below, Naanaa misappropriated Plaintiff's trade secrets.

136.   Naanaa acquired knowledge of Plaintiff's trade secrets through his role as Chief Technology Officer.

137.   The data Plaintiff accumulates, maintains, and retains with respect to each subscriber's use of Plaintiff's proprietary technology is itself a trade secret.

138.   When the data associated with a user's AI agent's memory is packaged in a .txt

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

file, it derives independent economic value from not being generally known to other persons who can obtain economic value from its disclosure or use. The accumulation and retention of that data is of economic value to the user as well, and is intended to keep subscribers with Plaintiff.

139.   Naanaa used Plaintiff's confidential and proprietary methods for creating, structuring, and retaining its AI agents' memory — methods Plaintiff developed at substantial cost and does not make public — to write the data-export prompt, which he then provided to Novosad to publish. The prompt reflects insider knowledge of Plaintiff's internal memory architecture: it names Plaintiff's non-user-facing internal files (USER.md, MEMORY.md, and the daily-memory files) and directs the agent to use its system file-reading tools. When a user runs the prompt, it causes that user's own AI agent to assemble the user's personal archive — profile, long-term memory, and daily diaries — into a single file that can be carried to a competing product. The prompt is thus evidence of Naanaa's use of Plaintiff's confidential memory architecture. The protected trade secret is that underlying architecture itself — the engine, methods, and source code by which Plaintiff creates and retains AI-agent memory — which derives independent economic value from not being generally known, value reflected in the costly infrastructure and prepaid AI-provider credits required to build and operate it.

140.   Additionally, on April 22, 2026, using a Cursor session on Mr. Panchenko's laptop, Naanaa covertly extracted Plaintiff's Nexus engine materials, the code which is Plaintiff's internal product/architecture materials. The Nexus is Plaintiff's core trade secret. It converts each user's accumulated history into a structured, searchable private memory.

141.   The Nexus is a key component Naanaa or anyone else needs to replicate Plaintiff's proprietary technology and directly compete with Plaintiff.

142.   Given the proprietary nature of the Nexus architecture, Plaintiff had embedded several confidential markers, which would allow Plaintiff to identify if it had been misappropriated and utilized by a competing venture.

143.   On April 23, 2026, Naanaa obtained a "clean" copy by making what looked like an ordinary request and rebuilt it for his own use.

144. As a direct and proximate result of Naanaa's misappropriation of Plaintiff's trade secrets, Plaintiff suffered economic harm and lost the competitive advantage it held as the developer of its proprietary and or patented technology, which cannot be quantified monetarily.

145. Naanaa's misappropriation was willful and malicious such that exemplary damages are warranted pursuant to 18 U.S.C. §1836(b)(3)(C).

## Count IX - Breach of Fiduciary Duty

### (against defendant Naanaa)

146. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 146 as if fully set forth herein.

147. A fiduciary relationship existed between Naanaa and Plaintiff, and Naanaa owed a fiduciary duty to Plaintiff.

148. Naanaa owed duties of loyalty, care, and good faith to Plaintiff.

149. Naanaa breached the fiduciary duty he owed to Plaintiff by using or taking Plaintiff's patented technology and confidential and proprietary information with the intent of using it for his own and or Novosad's financial gain, rather than that of Plaintiff.

150. Naanaa misrepresenting himself as the sole founder of Plaintiff and the owner of the patents that Plaintiff actually owned violated the duty of good faith he owed to Plaintiff.

151. Naanaa used Plaintiff's resources and infrastructure for purposes adverse to Plaintiff's interests.

152. Specifically, Naanaa facilitated Novosad's scheme to divert subscription fees from Plaintiff in violation of the duties owed to Plaintiff.

153. Naanaa also breached the fiduciary duty and duty of good faith owed to Plaintiff when he used Plaintiff's own confidential and proprietary information, which was only to be used in furtherance of Plaintiff's business, to pitch investors on his solo venture, 01Labs, in direct competition with Plaintiff, which Naanaa knew Plaintiff intended to solicit.

154. Plaintiff also suffered reputational harm and lost business opportunities, including with investors, as a result of Naanaa's breaches.

///

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

## Count X – Civil Claim for Violation of Comprehensive Computer Data Access and Fraud Act
## Cal Pen Code §502

(Against defendant Naanaa)

155. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-155 as if fully set forth herein.

156. Plaintiff seeks civil damages and reasonable attorney's fees pursuant to Cal. Pen. Code §502(e) for Naanaa's multiple violations of Cal. Pen. Code §502(c)(1), (2) and (4).

157. Plaintiff owns all data on its computers and network as set forth in the CPR Agreement.

158. Naanaa knowingly accessed without Plaintiff's permission Plaintiff's data, computer, and computer network in order to wrongfully obtain data.

159. Obtaining data from Plaintiff's network for purposes except as required in the performance of his authorized employment duties is prohibited by the terms of the CPR Agreement.

160. Additionally, Naanaa knowingly without Plaintiff's permission took, copied and made use of data from Plaintiff's computer and computer network.

161. Naanaa took four of Plaintiff's confidential profile files, developed by Plaintiff with Plaintiff's technology and built a 629-line negotiation playbook from them. Naanaa used this playbook against Plaintiff's CEO in a negotiation to increase his equity stake.

162. Plaintiff's proprietary methods that Naanaa copied from Plaintiff's network remain in Naanaa's hands.

163. Naanaa accessed and covertly extracted Plaintiff's core "Nexus" without Plaintiff's authorization.

164. Naanaa also accessed and provided approximately forty of Plaintiff's proprietary psychological-profiles, generated with Plaintiff's confidential methodology to individuals outside the company without Plaintiff's consent.

165. Naanaa modified Plaintiff's 'founders.json' to add Novosad — a person Plaintiff

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

never employed — conferring founder-level access and payout eligibility in the application."

166. Naanaa's accessing and taking Plaintiff's confidential and proprietary data, algorithms, and programs caused Plaintiff to suffer economic damages in the form of loss of potential investment capital and loss of its competitive advantage in the marketplace.

167. As a result of Naanaa's multiple and repeated violations of Cal. Pen. Code §502(c), Plaintiff seeks compensatory damages, injunctive relief, and other equitable relief as well as reasonable attorney's fees.

## Count XI - Unfair Competition in Violation of Cal Bus & Prof Code § 17200

(against all defendants)

168. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 168 as if fully set forth herein.

169. Defendants engaged in unlawful, unfair, and fraudulent business acts or practices in violation of Cal. Bus. Prof. Code §17200.

Unlawful Acts

170. Naanaa engaged in unfair competition in violation of Cal. Bus. Prof. Code §17200 by violating both California state law and federal law.

171. Naanaa violated Cal. Pen. Code §502(c).

172. Naanaa knowingly accessed without Plaintiff's permission Plaintiff's data, computer, and computer network in order to wrongfully obtain data.

173. Obtaining data from Plaintiff's network for purposes except as required in the performance of his authorized employment duties is prohibited by the terms of the CPR Agreement.

174. Additionally, Naanaa knowingly without Plaintiff's permission took, copied and made use of data from Plaintiff's computer and computer network.

175. Naanaa took four of Plaintiff's confidential profile files, developed by Plaintiff with Plaintiff's technology and built a 629-line negotiation playbook from them. Naanaa used this playbook against Plaintiff's CEO in a negotiation to increase his equity stake in Plaintiff.

176. Plaintiff's proprietary methods that Naanaa copied from Plaintiff's network

remain in Naanaa's hands.

177. Naanaa accessed and covertly extracted Plaintiff's core "Nexus" without Plaintiff's authorization.

178. Naanaa also accessed and provided approximately forty of Plaintiff's proprietary psychological-profiles, generated with Plaintiff's confidential methodology to individuals outside the company without Plaintiff's consent.

179. Without authorization, Naanaa modified Plaintiff's 'founders.json' to add Novosad — a person Plaintiff never employed — conferring founder-level access and payout eligibility in the application."

180. Naanaa and Novosad violated federal patent law set forth in 35 U.S.C. §271.

181. Defendant Naanaa and Novosad infringed Plaintiff's patents when they provided access to Plaintiff's patented technology in exchange for a subscription fee that Novosad retained without Plaintiff's authorization. The service subscribers received used or incorporated technology covered by the six patents Plaintiff owns.

182. Naanaa granted Novosad's subscribers direct access to Plaintiff's patented technology and service without Plaintiff's consent.

183. Novosad knew she was collecting subscription fees without Plaintiff's authorization and that Naanaa was providing access to Plaintiff's patented technology without authorization in exchange for the subscription fees she was collecting.

184. Upon information and belief, Naanaa has used and continues to use Plaintiff's patented technology for his own business without Plaintiff's authorization.

**Unfair Acts**

185. The above-described violations of state and federal law constitute unfair business practices.

186. Naanaa and Novosad collaborated in a scheme to divert Plaintiff's subscription fees and subscribers at Plaintiff's expense.

187. In collaboration with Naanaa, Novosad leveraged her social media influence and network to recruit subscribers to Plaintiff's service.

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

188.   Naanaa facilitated the servicing of these subscriptions from within Plaintiff's company.

189.   Novosad collected subscription fees from Tribute Subscribers and retained those fees rather than remitting them to Plaintiff, causing Plaintiff quantifiable economic harm due to the subscription fees it was not able to collect.

190.   Naanaa assisted Novosad by facilitating the servicing of the Tribute Subscribers subscriptions, knowing Novosad was retaining the subscription fees from those users.

191.   Naanaa and Novosad also conspired to divert Plaintiff's subscribers away from Plaintiff and to a competitor, presumably the competing venture Naanaa was developing, 01Labs.

192.   Defendants diverted those subscribers and their data files, built with Plaintiff's costly infrastructure and prepaid AI-provider credits, just as those subscribers were poised to become profitable to Plaintiff.

193.   The subscribers recruited by Novosad accounted for 79.1% of Plaintiff's infrastructure usage between March and May of 2026. That infrastructure was intended to last six to twelve months.

194.   In total, Novosad's cohort of subscribers, a portion of which were paying subscription fees to Novosad instead of Plaintiff, cost Plaintiff roughly $316,000–458,000 of prepaid AI-provider credits, intended to last 6–12 months, in seventy (70) days.

195.   Defendant Novosad used her social media influence and made false and defamatory statements regarding Plaintiff's data security in furtherance of Defendants' scheme.

196.   Novosad also instructed customers to export all data in a format that would allow it to be easily transferred to a competing company.

197.   Critically, Novosad published the data-export prompt Naanaa created or assisted in creating, which is a ready-made command that a user can copy and paste, which in turn creates the bot package containing their entire personal archive (profile, memories, diaries) into one file to take to a competitor.

198.   Plaintiff has suffered quantifiable economic harm due to subscribers

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

downloading their data file, and in some cases, cancelling their subscription and or seeking refunds.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

1. Compensatory damages against all defendants in an amount to be determined at trial, including but not limited to loss of infrastructure and prepaid AI-provider credits, lost subscription revenue, loss of future subscription revenue, infrastructure costs, and reputational harm;

2. Treble damages against defendant Naanaa for willful patent infringement pursuant to 35 U.S.C. § 284.

3. Exemplary damages pursuant to 18 U.S.C. §1836(b)(3)(C) for Defendants willful and malicious misappropriation of trade secrets;

4. Attorney's fees pursuant to Cal. Pen. Code §502(e) and attorney's fees and costs pursuant to 35 U.S.C. § 285;

5. An order requiring an accounting to determine the full extent of subscription fees collected by defendant Novosad and profits obtained by defendant Naanaa through their wrongful conduct;

6. Restitution and disgorgement of all fees wrongfully collected by Defendant Novosad and for loss of infrastructure and prepaid AI-provider credits consumed by subscribers Defendants diverted away from Plaintiff;

7. Temporary Restraining Order and Injunctive relief requiring Defendant Novosad to remove the data-extraction prompt from the public domain as well as a statement across all social media channels used retracting false statements made regarding data security and encouraging subscribers to use the prompt to extract their data;

8. Pre-judgment and post-judgment interest at the maximum rate permitted by law.

9. Such other and further relief as the Court deems just and proper.

///

///

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

**PATENT INFRINGEMENT IN VIOLATION OF 35 USC § 271; ETC.**

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated:  June 15, 2026                    **INFINITY LAW GROUP LLP**


By:  ___*/s/Meghan E. McCormick*_____
         S. Ashar Ahmed, Esq.
         Meghan E. McCormick, Esq.
         Sana Abbasi, Esq.
         Attorneys for Plaintiff
         PORTAL AI, INC.
         **INFINITY LAW GROUP LLP**
         1020 Aileen Street
         Lafayette, CA  94549
         Telephone:      (925) 732-1188
         Facsimile:      (415) 426-3581
         Email: aahmed@infinitylawca.com
         Email: mmccormick@infinitylawca.com
         Email: sabbasi@infinitylawca.com

**VERIFICATION**

I, Volodymyr Panchenko, declare and state as follows:

1.      I am over the age of eighteen (18) years. I am the Chief Executive Officer and Chief Financial Officer of PORTAL AI INC (the "Company"), and I am authorized to make this verification on behalf of the Company.

2.      My business address is 541 Jefferson Avenue, Suite 100, Redwood City, CA 94063.

3.      I have personal knowledge of the matters stated in this verification, and if called as a witness, I could and would competently testify to the matters stated herein, except as to those matters stated on information and belief, and as to those matters I believe them to be true.

This verification is made for filing in the United States District Court for the Northern District of California in connection with the following pleading/paper:

**VERIFIED COMPLAINT FOR:**

**Count I – Patent Infringement in Violation of 35 USC § 271; Count II – Inducement of Patent Infringement; Count III – Breach of Contract; Count IV – Fraudulent Concealment Cal. Civ. Code §§ 1709-1710; Count V – Civil Conspiracy; Count VI – Conversion; Count VII – Aiding and Abetting Conversion; Count VIII – Misappropriation of Trade Secrets 18 USC § 1836-1839 et. seq.; Count IX - Breach of Fiduciary Duty; Count X – Civil Claim for Violation of Comprehensive Computer Data Access and Fraud Act, Cal Pen Code §502; Count XI - Unfair Competition in Violation of Cal Bus & Prof Code § 17200 (the "Verified Filing"),**

filed or to be filed by PORTAL AI INC in the above-captioned action.

4.      I have read the Verified Filing and know its contents.

5.      The statements in the Verified Filing are true and correct of my own knowledge, except as to matters stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 15, 2026, at _____Santa Monica_____, California.

*Volodymyr Panchenko*

_____

Volodymyr Panchenko
Chief Executive Officer
Chief Financial Officer

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

Doc ID: 329b4c657dafe9a0811d076e083ce5eb367b0ba1