S. ASHAR AHMED (SBN 256711)
MEGHAN E. MCCORMICK (SBN 283853)
SANA ABBASI (SBN 303380)
**INFINITY LAW GROUP LLP**
1020 Aileen Street
Lafayette, CA 94549
Telephone: (925) 732-1188
Facsimile: (415) 426-3581
Email: aahmed@infinitylawca.com
Email: mmccormick@infinitylawca.com
Email: sabbasi@infinitylawca.com

Attorneys for Plaintiff,
PORTAL AI, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

PORTAL AI, INC., a Delaware corporation,

Plaintiff,

v.

MOHAMMAD NAANAA, an individual and MARIIA NOVOSAD, a/k/a MARIE NOVOSAD, an individual,

Defendants.

CASE NO.: **2:26-cv-06519**

**VERIFIED AMENDED COMPLAINT FOR:**
**Count I – Patent Infringement in Violation of 35 USC § 271;**
**Count II – Inducement of Patent Infringement;**
**Count III – Breach of Contract;**
**Count IV – Fraudulent Concealment Cal. Civ. Code §§ 1709-1710;**
**Count V – Civil Conspiracy;**
**Count VI – Conversion;**
**Count VII – Aiding and Abetting Conversion;**
**Count VIII – Misappropriation of Trade Secrets 18 USC § 1836-1839 et. seq.;**
**Count IX - Breach of Fiduciary Duty;**
**Count X – Civil Claim for Violation of Comprehensive Computer Data Access and Fraud Act, Cal Pen Code §502;**
**Count XI - Unfair Competition in Violation of Cal Bus & Prof Code § 17200;**
**Count XII – Intentional Interference with Prospective Economic Advantage;**
**Count XIII - Intentional Interference with Contractual Relations**

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189



Doc ID: 607b178d31f016497148a93204697db0bd20555f

Plaintiff, PORTAL AI, INC. ("Portal") by and through its undersigned attorneys, hereby asserts and claims as follows:

## PARTIES

1. Plaintiff, Portal, is a corporation formed under the laws of the State of Delaware, with a principal place of business in Redwood City, California.

2. Defendant Mohammad Naanaa ("Naanaa") is a resident of Santa Monica, California.

3. Defendant Mariia Novosad, a/k/a Marie ("Novosad") is a resident of Santa Monica, California.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 USC §§1331 and 1338, and 18 USC 1836(c) as Plaintiff has alleged causes of action arising under the laws of the United States relating to patent infringement (35 USC § 271) and misappropriation of trade secrets pursuant to the Defense of Trade Secrets Act (18 USC § 1836 *et seq.*).

5. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 USC § 1367, as those claims form part of the same case or controversy under Article III of the United States Constitution.

6. This Court has personal jurisdiction over both Naanaa and Novosad pursuant to Rule 4 (k) (1) (A) of the Federal Rules of Civil Procedure, as both defendants are residents of the State of California.

7. Venue is proper in this Court pursuant to 28 USC § 1400(b), as this case involves patent infringement, and Defendants Naanaa and Novosad reside in this District.

## STATEMENT OF FACTS

8. Portal AI develops personal artificial-intelligence agents: each subscriber gets a personal AI assistant — reachable through ordinary messaging apps such as Telegram and iMessage — that accumulates a private, lifelong memory of the subscriber and performs tasks for them. The company's patented technology covers the underlying engine: breaking a user's request into sub-tasks, selecting and ranking which specialized AI 'worker agents' should handle

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189



Doc ID: 607b178d31f016497148a93204697db0bd20555f

each part, enriching the request with the user's context, and verifying the agents' work. Plaintiff's product is built on Portal's private memory and retrieval layer ('Nexus'), which indexes Portal's algorithms, research, profiles, and the founder Volodymyr Panchenko's working files. The technology was developed over roughly two to three years, with patent priority dating back to 2023. The accumulated private memory — which grows with use and cannot be obtained by copying source code — is what keeps subscribers and what a competitor cannot replicate without Plaintiff's data.

9. The initial building of the agent's memory is the phase of the service that is most costly to Plaintiff because of the amount of prepaid AI computing capacity that is burned in doing so. Once the memory is built, it is that accumulated memory that makes the product stick (i.e., incentivizes a subscriber to continue to use Plaintiff's product).

10. Plaintiff owns six issued United States patents, with priority dating to September 2023, and a further application pending. Five patents had issued during the time Plaintiff employed Naanaa, and the sixth (No. 12,640,924 B2) (letter a. below) issued on or about May 26, 2026. The Patent No., Title, and Legal Description for each patent are as follows:

a. Patent No. US 12,640,924 B2 ("Methods and Systems for Enhancing a Context for Use in Processing a User Request"); Covers enhancing the context used to process a user request by drawing on the user's interaction history — recording the user's past requests, the agent's responses, and the user's feedback; summarizing and storing that history for fast retrieval; and, for each new request, identifying its intent, retrieving the most relevant past material by similarity, and adding it to the request to produce an enhanced context;

b. Patent No. US 12,407,510 B2 ("Methods and Systems for Ranking a Plurality of Worker Agents Based on a User Request"); Covers ranking worker agents using request-specific criteria, metrics, relevance, performance, and other factors to determine the best agent for a task;

c. Patent No. US 12,395,337 B2 ("Methods and Systems for Enhancing a Context for Use in Processing by a Plurality of Artificial Intelligence Agents, a Request"); Covers context-enhanced multi-agent processing, including selecting worker agents, processing request parts, extracting relevant context, and augmenting later request parts with that context;

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189



Doc ID: 607b178d31f016497148a93204697db0bd20555f

d. Patent No. US 12,265,856 B1 ("Methods and Systems for Identification and Semantic Clustering of Worker Agents for Processing Requests") Covers identifying worker agents, tracking availability, computing drift/relevance metrics, clustering agents by semantic capability, and selecting suitable agents;

e. Patent No. US 12,260,005 B1 ("Methods and Systems for Verifying a User Agent"); Covers verifying a user agent using predefined requests, embeddings, similarity criteria, query-plan generation, and approval logic;

f. Patent No. US 12,238,213 B1 ("Methods and Systems for Verifying a Worker Agent"); Covers verifying a worker agent by reviewing its capability description, generating test request-output pairs, comparing actual outputs to expected outputs, and approving or rejecting the worker agent.

11. Plaintiff also has a patent application pending with the United States Patent and Trademark Office: Publication No. 2025/0274284 A1; Application No. 19/083,597 ("Methods and Systems for Query Decomposition, Agent Ranking, and Execution of Selected Agents from a Plurality of Agents"); Covers decomposing a user request into sub-tasks, identifying candidate worker agents, ranking them, assigning sub-tasks, and returning results.

**Defendant Naanaa**

12. Defendant Naanaa is Plaintiff's former employee who served as its Chief Technology Officer ("CTO"). Plaintiff's CEO, Treasurer, and Secretary was and is Volodymyr Panchenko.

13. As Plaintiff's CTO, Naanaa had access to Plaintiff's proprietary and confidential information, including its patented technology.

14. Naanaa entered into a Confidentiality and Proprietary Rights Agreement with Plaintiff on or around August 19, 2024 ("CPR Agreement") (attached hereto as **Exhibit A**).

15. Under this agreement, Naanaa agreed to the following:

a. Not to use or disclose Confidential Information, including but not limited to confidential, secret, and proprietary documents, materials, data, and other information in tangible and intangible form, of and relating to Plaintiff and its businesses and existing and prospective

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189



Doc ID: 607b178d31f016497148a93204697db0bd20555f

customers, suppliers, investors and other associated third parties, and that disclosure of Confidential Information will cause irreparable harm for which remedies at law will not be adequate;

b. That any Confidential Information developed by Mr. Naanaa in the course of his employment with Plaintiff shall be subject to the same terms and conditions of the Agreement as if Plaintiff furnished the same Confidential Information in the first instance;

c. Not to access, use, or remove any Confidential Information except as required in the performance of his authorized employment duties;

d. Not to access or use any Facilities and Information Technology and Access Resources in any manner after the termination of his employment by Plaintiff, whether termination is voluntary or involuntary;

e. That the agreement shall continue during and after Mr. Naanaa's employment;

f. That all technology, inventions, discoveries, ideas, or other work product of any nature that Naanaa created individually or jointly while employed by Plaintiff that relate to Plaintiff's business, research, or development, as well as any rights in and to trade secrets, patents, and other intellectual property rights, are the sole and exclusive property of Plaintiff;

g. That upon voluntary or involuntary termination, Naanaa was to (A) return all Employer documents and materials belonging to Plaintiff and stored in any fashion, including but not limited to those that constitute or contain any Confidential Information or Work Product, that are in his possession or control, and (B) delete or destroy all copies of any such documents and materials not returned to Plaintiff that remain in his possession or control.

16. The proprietary rights section of the Agreement further specified that "Work Product includes, but is not limited to, Employer information, including plans, publications, research, strategies, techniques, agreements, documents, contracts, terms of agreements, negotiations, know-how, computer programs, computer applications, software design, web design, work in progress, databases, manuals, results, developments, reports, graphics, drawings, sketches, market studies, formulae, notes, communications, algorithms, product plans, product designs, styles, models, audiovisual programs, inventions, unpublished patent applications,

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189



Doc ID: 607b178d31f016497148a93204697db0bd20555f

original works of authorship, discoveries, experimental processes, experimental results, specifications, customer information, client information, customer lists, client lists manufacturing information, advertising information and sales information."

17. The Agreement also contained a non-disparagement clause that stated, "The Employee agrees and covenants that the Employee will not make, publish, or communicate defamatory or disparaging remarks, comments, or statements concerning any of the Employer's products or services. The Employee agrees and covenants that the Employee will not at any time make, publish, or communicate to any person or entity or in any public forum maliciously false, defamatory, or disparaging remarks, comments, or statements concerning the Employer or its businesses, or any of its employees, officers, and existing and prospective customers, suppliers, investors and other associated third parties.

18. Moreover, pursuant to the CPR Agreement, Naanaa agreed "that [Portal's] Confidential Information and [Portal's] ability to reserve it for the exclusive knowledge and use of the [Portal] is of great competitive importance and commercial value to [Portal], and that improper use or disclosure of the Confidential Information by [Naanaa] *will cause irreparable harm to [Portal]*, for which remedies at law will not be adequate. In the event of a breach or *threatened breach* by [Naanaa] of any of the provisions of this Agreement, the Employee hereby consents and agrees that [Portal] shall be entitled to seek, in addition to other available remedies, a *temporary or permanent injunction* or other equitable relief against such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that monetary damages would not afford an adequate remedy, and without the necessity of posting any bond or other security. (Ex. A, p. 8, section 6 [emphasis added].)

19. Defendant Naanaa was terminated from Plaintiff Portal AI for cause effective May 21, 2026.

20. Plaintiff has evidence that Naanaa began pursuing his own company in direct competition with Plaintiff as early as mid-March 2026, while he was still employed by Plaintiff.

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189



Doc ID: 607b178d31f016497148a93204697db0bd20555f

Naanaa has referred to this company as "01Labs,"[1] and he registered the domain 01labs.ai on May 22, 2026.

21. Mr. Panchenko has since discovered that Naanaa has blatantly and continuously violated and continues to violate multiple provisions of the CPR Agreement.

22. Specifically, Naanaa has violated the CPR Agreement in the following manner:

a. He has used profiles developed at Portal using a program called Cursor for his own business purposes, including the promotion of his business.

b. He took four of Plaintiff's confidential profile files, developed by Plaintiff with Plaintiff's technology, and built a 629-line negotiation playbook from them. Naanaa used this playbook against Mr. Panchenko in an equity negotiation that Naanaa initiated at the same time he was developing his own competing company. Plaintiff's proprietary methods remain in Naanaa's hands.

c. He provided approximately forty of Plaintiff's proprietary psychological-profiles, generated with Plaintiff's confidential methodology, to individuals outside the company.

d. He has represented to investors that he was the sole founding partner of Plaintiff, and that he was the owner of five of Plaintiff's patents.

e. He shared proprietary information concerning Plaintiff's product and infrastructure configuration — including its agent-hosting architecture, billing and subscription configuration, internal algorithms, and customer/creator program structure with Co-Defendant Mariia Novosad while he was still employed at Portal.

f. Naanaa collaborated and conspired with Novosad, who is Naanaa's girlfriend and a social media influencer, to make misleading and disparaging statements regarding Plaintiff's data security in an effort to drive subscription users away from Plaintiff and to 01Labs instead, where, upon information and belief, Naanaa intends to use or is using Plaintiff's proprietary information and technology, including its patented technology, for his own business.

g. On April 22, 2026, in an unauthorized Cursor session on Mr. Panchenko's

[1] Naanaa also referred to his solo venture as "Zero One Labs," "Zero-One-Labs" and "Zero One Laboratories, Inc."

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189



Doc ID: 607b178d31f016497148a93204697db0bd20555f

computer, Naanaa caused Portal's internal memory/search system to generate a confidential architectural brief and live inventory of Portal's Nexus implementation. The inventory identified approximately 155,570 indexed internal records across 22 private collections, including corpus names, counts, file paths, privacy model, evaluation metrics, and roadmap information. In plain English, this was a map of Portal's internal knowledge system and how its confidential materials were organized and retrieved; it was not a user-facing export.

h. Naanaa used Plaintiff's confidential information relating to its investors or potential investors to raise capital for his own business. Specifically, while still an employee for Plaintiff, Naanaa pitched 01Labs to accelerator and fellowship programs — including Y Combinator, Neo, and Z Fellows — and to venture-capital investors — including Fellows Fund — and, on information and belief, to others, presenting Plaintiff's annual recurring revenue (ARR), customer count, and retention data as his own.

i. Upon his termination, Naanaa did not return or destroy all of Plaintiff's documents and materials, including but not limited to those that constitute or contain Confidential Information or Work Product. Plaintiff's Confidential Information and Work Product remains in Naanaa's possession.

23. Mr. Naanaa's above-listed conduct has caused and continues to cause Plaintiff to suffer irreparable harm.

**Defendant Mariia Novosad**

24. Mariia Novosad is Naanaa's girlfriend and a social media influencer. Mariia Novosad also goes by the name Marie Novosad.

25. Naanaa and Novosad collaborated in a scheme to divert Plaintiff's subscription fees and subscribers away from Plaintiff at Plaintiff's expense.

26. Upon information and belief, Novosad recruited large numbers of subscribers with the intention that they would consume Plaintiff's costly infrastructure and prepaid AI-provider credits before Defendants diverted Plaintiff's subscribers to the competing venture Naanaa was in the midst of developing, 01Labs.

27. Plaintiff collected subscription fees from subscribers using a payment app called

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189



Doc ID: 607b178d31f016497148a93204697db0bd20555f

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

Stripe ("Stripe Subscribers").

28. Novosad had a large social media presence and audience.

29. In collaboration with Naanaa, Novosad leveraged her social media influence and network to recruit subscribers to Plaintiff's service.

30. Naanaa facilitated the servicing of these subscriptions from within Plaintiff's company.

31. Novosad collected subscription fees from some of these subscribers using a payment method called Tribute ("Tribute Subscribers") and retained those fees rather than remitting them to Plaintiff.

32. At or around the time of his termination, Naanaa disclosed a ledger he had been maintaining of the subscription fees Novosad collected with Tribute but did not remit to Plaintiff.

33. Naanaa provided Tribute Subscribers direct access to Plaintiff's technology, which they otherwise would not have had if Naanaa had not provided this direct access himself. In other words, together and in collaboration with each other, Naanaa and Novosad collected and retained money from subscribers in exchange for access to Plaintiff's patented technology.

34. Plaintiff and its CEO, Mr. Panchenko, did not have access to the Tribute account Novosad used to collect subscription fees. In fact, neither Novosad nor Naanaa disclosed to Mr. Panchenko that Novosad was collecting subscription fees for Plaintiff's service using Tribute.

35. Novosad was never an employee of Plaintiff. Subscribers Novosad recruited and from whom she collected payment were only able to access Plaintiff's service with the assistance of Naanaa. Without Naanaa's assistance in accessing Plaintiff's service, Novosad would not have been able to sell subscriptions.

36. Over the course of at least two and a half months, Novosad collected thousands of dollars from Tribute Subscribers, and Naanaa facilitated the Tribute Subscribers use of Plaintiff's proprietary technology and service without Plaintiff's knowledge or consent.

37. Upon information and belief, Novosad shared the subscription fees she collected using Tribute with Naanaa.

38. To date, Defendants have not provided Plaintiff with any of the revenue Novosad

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

collected from Tribute Subscribers.

39. In addition to the Tribute subscribers, Novosad recruited a large population of Stripe Subscribers while Naanaa was in the midst of developing his own solo venture, 01Labs. She subsequently assisted Naanaa in diverting those subscribers and their data files, built with Plaintiff's costly infrastructure and prepaid AI-provider credits, to Naanaa's competing company just as those subscribers were poised to become profitable to Plaintiff.

40. Naanaa used Plaintiff's resources and costly infrastructure to service the subscriptions of subscribers Novosad had recruited, some of whom were paying subscription fees to Novosad rather than Plaintiff.

41. The subscribers recruited by Novosad accounted for approximately 79% of Plaintiff's infrastructure usage between March and May of 2026. Plaintiff intended for that infrastructure to last six to twelve months.

42. In total, Novosad's cohort of subscribers, a portion of which were paying subscription fees to Novosad instead of Plaintiff, cost Plaintiff roughly $198,000 in prepaid AI-provider credits that were consumed over the course of seventy (70) days.

43. Following the termination of the Tribute subscriptions, Novosad made and continues to make numerous public statements — including but not limited to posts on social media platforms, videos, and other online channels — stating the quality and safety of Plaintiff's client data could no longer be ensured due to Mr. Naanaa no longer having access to the accounts. Novosad also instructed customers to export all data in a format that would allow it to be easily transferred to a competing company.

44. In fact, Novosad published a ready-made data-export prompt that a subscriber could paste into his or her own Portal agent. The command causes the subscriber's agent to assemble his or her own profile, long-term memory, and daily diary files into a single portable archive that can then be readily transferred to a competitor.

45. As soon as 01Labs had a live website, which was in or around June 12, 2026, Novosad published a direct bio-link[2] to a landing page for 01Labs, further encouraging the

[2] A bio-link is a clickable link in a social media profile that routes the audience to a destination; here, @marie.novosad's profile has a bio-link to 01labs.ai/lecture (a paid sign-up for a competing service).



Doc ID: 607b178d31f016497148a93204697db0bd20555f

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

diversion of subscriptions away from Plaintiff and to 01Labs.

46. The prompt reflects Portal-insider knowledge of internal workspace files and the system file-reading tool surface. Based on Naanaa's role as Plaintiff's technology officer, Novosad's publication of the prompt, and the surrounding migration plan suggest that the publication of the prompt was a joint act.

47. The prompt Novosad published has been pasted by no less than seventy-three (73) users, and at least twenty-eight (28) archives have been created.

48. As of May 19, 2026, eighty-two percent (82%) of Portal's paying subscribers were recruited by Novosad. She maintains a direct channel of communication with these subscribers.

49. The use of the prompt and the archiving/downloading that has occurred since Naanaa was terminated is a direct and proximate result of Naanaa's blatant violation of the CPR Agreement and Novosad's false and defamatory statements regarding Plaintiff's lack of security and ability to keep subscriber data safe. Some subscribers who have cancelled their subscriptions after exporting their data with the prompt Novosad published cited Novosad's messaging on social media as the reason for terminating their subscription.

50. As a direct and proximate result of Defendants' above-described conduct, Plaintiff has suffered substantial economic damages in the form of lost subscription revenue, loss of startup capital and other resources, and loss of costly infrastructure and prepaid AI provider credits. Additionally, Plaintiff has suffered reputational harm that cannot be quantified monetarily.

## CLAIMS FOR RELIEF

## Count I – Patent Infringement in Violation of 35 USC § 271

## (against Defendants Naanaa and Novosad)

51. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 50 as if fully set forth herein.

52. Patent infringement occurs when an individual without authority, makes, uses, offers to sell, or sells a patented invention within the United States.



Doc ID: 607b178d31f016497148a93204697db0bd20555f

53. Defendant Naanaa and Novosad infringed Plaintiff's patents when they provided access to Plaintiff's patented technology in exchange for a subscription fee. The service subscribers received used or incorporated technology covered by Plaintiff's six (6) patents set forth in Paragraph 10 above.

54. Naanaa granted Novosad's Tribute Subscribers direct access to Plaintiff's patented technology and service without Plaintiff's consent.

55. Naanaa accomplished this by running scripts on Plaintiff's servers that granted users who had not paid a subscription fee to Plaintiff full paid access to Plaintiff's product and service despite lack of payment to Plaintiff.

56. These same scripts that Naanaa ran also manipulated the method by which Plaintiff tracked infrastructure consumption, so the infrastructure consumption cost attributable to non-paying users would go undetected.

57. Novosad knew she was collecting subscription fees without Plaintiff's authorization and that Naanaa was providing access to Plaintiff's patented technology without authorization in exchange for the subscription fees she was collecting.

58. As a direct and proximate result of Naanaa's and Novosad's infringement, Plaintiff suffered damages in the form of lost subscription revenue and loss of costly infrastructure resources used to support the subscriptions Novosad solicited.

59. In addition, so long as Defendant Naanaa remains in possession of Plaintiff's patented technology for use or potential use with 01Labs, Plaintiff will suffer irreparable harm in the form of the loss of the competitive edge Plaintiff holds due to the loss of its exclusive use of its patent protected technology.

## **Count II – Inducement of Patent Infringement**
## **(against Defendant Novosad)**

60. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 59 as if fully set forth herein.

61. Defendant Novosad knowingly induced infringement of Plaintiff's aforementioned patents.

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189



Doc ID: 607b178d31f016497148a93204697db0bd20555f

62. Novosad collaborated with Naanaa in a scheme to use Plaintiff's patented technology to service paid subscriptions that Novosad recruited through her social media influence.

63. Novosad knew that Naanaa was using Plaintiff's patented technology without authorization to service the subscriptions of users from whom she was collecting subscription fees.

64. Novosad actively encouraged and facilitated Naanaa's use of Plaintiff's patented technology by recruiting subscribers for services that required use of the patented technology.

65. But for Naanaa's access to Plaintiff's technology and his facilitation of subscriber use, Novosad would not have had access to Plaintiff's service and would not have been able to recruit subscribers to pay subscription fees directly to her.

66. Novosad also induced subscribers from whom she was collecting subscription fees to use Plaintiff's patented technology without Plaintiff's consent.

67. Novosad led subscribers to believe they were paying Plaintiff in exchange for authorized use of Plaintiff's technology. These subscribers did not know and could not have known Novosad was not transferring subscription fees to Plaintiff and that the use of Plaintiff's patented technology was not authorized.

68. Novosad's actions caused both Naanaa, and individuals making subscription payments to Novosad, to infringe Plaintiff's patents.

69. But for Novosad's recruitment of subscribers and her collaboration with Naanaa, the infringement would not have occurred or would not have occurred to the same extent.

70. Novosad knew or should have known that Plaintiff's service utilized patented technology that neither she, Naanaa, nor subscribers were authorized to use without Plaintiff's consent or authorization.

71. As a direct and proximate result of Novosad's efforts to cause Naanaa and subscribers unauthorized use of Plaintiff's patented technology, Plaintiff suffered significant economic damages in the form of lost subscription revenue, loss of startup capital and other resources, and loss of costly infrastructure.

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189



Doc ID: 607b178d31f016497148a93204697db0bd20555f

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

## Count III – Breach of Contract

## (Against Defendant Naanaa)

72. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 71 as if fully set forth herein.

73. While Naanaa was first employed by Plaintiff in September 2023, his role as Chief Technology Officer was formalized in an Employment Agreement dated June 14, 2024 ("Employment Agreement") (**Exhibit B**). The Employment Agreement included the terms of Naanaa's employment, and in return, he was promised a salary, which was also set forth in the agreement.

74. The Employment Agreement, signed by Naanaa, prohibited Naanaa from engaging in any employment, consulting, or other business activity that would create a conflict of interest with Plaintiff, while employed by Plaintiff, unless approved by Plaintiff's Board of Directors.

75. The CPR Agreement that Naanaa signed on August 19, 2024 (**Ex. A**) was also a valid written contract with Plaintiff.

76. Naanaa's employment with Plaintiff was conditioned on his acceptance of the terms of the CPR Agreement.

77. Lastly, Naanaa signed an Employee Handbook on December 14, 2024 ("Employee Handbook") (**Exhibit C**). Naanaa's continued employment with Plaintiff was conditioned on Naanaa agreeing to the terms, policies, and obligations set forth in the Employee Handbook.

78. Pursuant to the CPR Agreement, Naanaa agreed not to use Plaintiff's Confidential Information, proprietary technology, or Work Product for his own benefit or for any purpose other than Plaintiff's business.

79. Also under the CPR Agreement, Naanaa agreed not to retain any of Plaintiff's documents, data, Confidential Information or Work Product upon his termination from Plaintiff.

80. Similarly, pursuant to the Employee Handbook, Naanaa agreed that upon departure from Plaintiff, he would return all office supplies, equipment, computers, credit cards,



Doc ID: 607b178d31f016497148a93204697db0bd20555f

keys, and property belonging to Plaintiff, including, without limitation, any confidential, proprietary or trade secret information. Under a separate provision in the Employee Handbook, Naanaa agreed to return any Confidential Information in his possession to Plaintiff on termination of employment with Plaintiff and that he would be required to sign an acknowledgment of the same.

81. Naanaa breached the terms of the CPR Agreement while employed by Plaintiff and upon his termination, as set forth in detail in Paragraph 22 above.

82. Naanaa violated both the CPR Agreement and the Employee Handbook when he was terminated from Plaintiff by retaining confidential and proprietary information without authorization, as evidenced by the existence of the prompt that could only be created using Plaintiff's proprietary information and methods.

83. This was in breach of the CPR Agreement provision providing that all technology developed at Portal, including the patented technology, remains the exclusive property of Portal and that Naanaa has no right to use, disclose, or commercialize such technology without Plaintiff's express written consent.

84. Naanaa also violated provision 1. (b) (i) (C) of the CPR Agreement, which prohibited accessing, using, or removing Plaintiff's Confidential Information (as defined in the Agreement) for reasons other than the performance of his employment duties to Plaintiff.

85. Naanaa used, and upon information and belief continues to use or threatens to use, technology covered by six (6) of Plaintiff's patents (listed in Paragraph 10 above) for his own business, 01Labs, in direct violation of the CPR Agreement.

86. Naanaa's covert extraction of Plaintiff's confidential profiles and proprietary algorithms, without consent and for purposes other than those of Plaintiff's business also violated the CPR Agreement. Naanaa then used those profiles for his own business purposes and economic gain, again in violation of the CPR Agreement, the Employee Handbook and the Employment Agreement.

87. On April 22, 2026, Naanaa extracted Plaintiff's core Nexus, which was both confidential and proprietary Work Product, as defined by the CPR Agreement. Plaintiff's Nexus

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189



Doc ID: 607b178d31f016497148a93204697db0bd20555f

is its core trade secret. It is Plaintiff's proprietary long-term AI-memory engine and the proprietary knowledge base it has accumulated: Portal's non-public memory schema, source code, deployed configuration, tuned retrieval values, corpus taxonomy, privacy-tier and access-control design, and aggregated proprietary dataset.[3]

88. In an unauthorized session on Mr. Panchenko's laptop, Naanaa accessed Mr. Panchenko's confidential files and proprietary Work Product, as defined by the CPR Agreement, and produced a confidential architectural brief and a live inventory of 155,570 entries across 22 internal collections, including corpus names, counts, file paths, privacy model, evaluation metrics, and roadmap information. In plain English, this was a map of Portal's internal knowledge system and how its confidential materials were organized and retrieved; this was not a user-facing export.

89. Naanaa also used Plaintiff's resources and infrastructure to service subscriptions for subscribers Novosad recruited, in violation of the CPR Agreement, the Employee Handbook, and the Employment Agreement.

90. Further, Naanaa breached the Employment Agreement by pursuing fundraising for a competing venture 01 Labs while employed by Plaintiff and using Plaintiff resources.

91. This is evidenced by accelerator applications Naanaa submitted relating to 01Labs or a solo venture.

92. This created a conflict of interest with Plaintiff that was compounded by the fact that Naanaa represented to potential investors that he owned the patents that were actually owned by Plaintiff and represented that Plaintiff's metrics were that of his own company.

93. Upon his termination, despite Plaintiff requesting that Naanaa return the laptop Plaintiff provided him, Naanaa has not done so. Naanaa claims he left the laptop at Plaintiff's office before departing for a trip, prior to his termination. However, he did not personally hand the laptop to anyone, and Plaintiff's CEO and employees have not been able to locate the laptop anywhere in Plaintiff's office.

[3] Plaintiff does not claim as trade secrets the general AI-memory concepts or general methods publicly disclosed in its patents.

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189



Doc ID: 607b178d31f016497148a93204697db0bd20555f

94. Moreover, to date, Naanaa has not signed the acknowledgment confirming that he returned all company property, as required by Employee Handbook.

95. Plaintiff was damaged by Naanaa's multiple breaches of multiple contracts Naanaa had entered into with Plaintiff.

96. Naanaa's use of Plaintiff's proprietary information for his own business venture and fundraising in direct competition with Plaintiff caused Plaintiff economic harm in the form of loss of potential investment capital and loss of its competitive advantage. Plaintiff also lost a significant amount of its costly infrastructure due to Naanaa granting Novosad's subscribers access to that infrastructure.

97. Plaintiff suffered reputational harm and lost business opportunities as a result of Naanaa's multiple breaches described above.

98. Additionally, pursuant to the CPR Agreement, Naanaa has acknowledged the improper use or disclosure of Confidential Information will cause irreparable harm to Plaintiff, including financial costs, loss of business advantage, and other potential harms.

99. By signing the CPR Agreement Naanaa also agreed that in the event of a breach or threatened breach of the agreement, he consented to and agreed that Plaintiff is entitled to seek a temporary or permanent injunction without showing actual damages, *and without posting any bond or other security*." (Ex. A, p. 8, section 6 [emphasis added].)

## Count IV – Fraudulent Concealment
## Cal. Civ. Code §§ 1709-1710
## (against Defendant Naanaa)

100. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-99 as if fully set forth herein.

101. As the Chief Technology Officer, Naanaa owed Plaintiff a fiduciary duty.

102. While employed by Plaintiff, Naanaa intentionally failed to disclose the following material facts to Plaintiff with the intent to deceive Plaintiff:

a. That while he was still employed by Plaintiff, Naanaa began pursuing a company of his own, 01Labs, a company Naanaa intended and intends to directly compete with Plaintiff;

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189



Doc ID: 607b178d31f016497148a93204697db0bd20555f

b. That while he was still employed by Plaintiff, he was using company time and resources to raise capital for his own business venture rather than raise capital for Plaintiff;

c. That while still an employee for Plaintiff, Naanaa pitched 01Labs to investors and used Plaintiff's confidential information relating to its investors or potential investors to raise or attempt to raise capital for his own business. Specifically, while still an employee for Plaintiff, Naanaa pitched 01Labs to accelerator and fellowship programs — including Y Combinator, Neo, and Z Fellows — and to venture-capital investors — including Fellows Fund — and, on information and belief, to others;

d. That in doing so, Naanaa presented Plaintiff's annual recurring revenue (ARR), customer count, and retention data as that of his own company;

e. That in pitching his own company to investors, Naanaa falsely represented that Plaintiff's five patents belonged to him;

f. That in pitching investors, Naanaa represented himself as the sole founder of Plaintiff;

g. That his girlfriend, Novosad, was collecting subscription fees for Plaintiff's service, and Naanaa, was in turn, granting subscribers access to Plaintiff's service and patented technology without Plaintiff's knowledge or consent;

h. That he had conspired with Novosad to use her social network to recruit subscribers to Plaintiff's service, intending to divert them to a competing company (presumably 01Labs) after they had consumed Plaintiff's infrastructure and AI-provider credits and were just becoming or about to become profitable.

i. That in mid-March of 2026, Naanaa accessed and modified Plaintiff's 'founders.json' adding Novosad, who Portal never employed, conferring free, top-tier, 'Founding Member' access to the paid product at no charge.

j. That while employed by Plaintiff, Naanaa covertly extracted Plaintiff's full Nexus, which is Plaintiff's core trade secret, using a Cursor session on a computer owned by Mr. Panchenko.

k. That at the same time he was trying to renegotiate his equity stake in Plaintiff,

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189



Doc ID: 607b178d31f016497148a93204697db0bd20555f

Naanaa was preparing to make a solo exit.

l. That Naanaa was running scripts on Plaintiff's servers that granted users who had not paid a subscription fee to Plaintiff full paid access to Plaintiff's product and service despite lack of payment to Plaintiff.

m. That the scripts Naanaa ran also manipulated the method by which Plaintiff tracked infrastructure consumption, so the infrastructure consumption cost attributable to non-paying users would go undetected.

103. Plaintiff was not aware of any of the above facts in the previously stated paragraph, subsections (a-m) until at least May 21, 2026.

104. Naanaa's intention to conceal material information from his employer, Plaintiff, and its CEO and Naanaa's once-friend, Mr. Panchenko, is evidenced by his own statements, which Plaintiff eventually discovered in Naanaa's memory files, including but not limited to the following:

a. On at least three occasions between April 10 and April 13, 2026, Naanaa's AI agent's strategy notes, which he directed and adopted stated, "Vlad doesn't know the Anthropic relationship nuance."[4]

b. On April 14, 2026, in a deeply private concealment marker (standing instructions he wrote into his AI agent's memory on company servers), Naanaa's AI-agent entries in the daily-memory files stated, "DEEPLY PRIVATE – "never reference co-founder split considerations externally. Never share with Vlad's agent Alice or anyone else." A separate entry on April 15, 2026 stated, "DEEPLY PRIVATE – never share co-founder tension or solo founder considerations externally," These instructions were repeated in multiple places.

c. On May 7, 2026, Naanaa's internal strategy note stated, "01Labs bomb hasn't been dropped yet."

d. On May 11, 2026, he wrote, "Vlad does NOT know about the YC application or

[4] Upon information and belief, the nuance referenced is that Naanaa had positioned himself as the sole holder of Plaintiff's relationship with Anthropic — Plaintiff's most strategic partner — keeping Panchenko out of those conversations while planning his exit.

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189



Doc ID: 607b178d31f016497148a93204697db0bd20555f

01Labs."[5]

105. Had Mr. Panchenko or others acting as agents for Plaintiff, become aware that Naanaa was concealing the above facts and information, Naanaa would have been terminated immediately, as Naanaa's patent infringement and false representations to investors were, and continue to be, damaging to Plaintiff.

106. Had Mr. Panchenko or others acting as agents for Plaintiff, become aware that Naanaa was concealing the above facts and information, Plaintiff would have taken steps to ensure its costly infrastructure and prepaid AI-provider credits were not consumed by the subscribers Novosad recruited.

107. Plaintiff has lost business opportunities, as Naanaa's false representations to investors caused Plaintiff reputational harm and diverted investors away from Plaintiff. By losing these potential investors, Plaintiff suffered irreparable harm that cannot be quantified with money damages alone.

108. As a direct and proximate result of Naanaa's fraudulent concealment, Plaintiff suffered economic harm in the form of lost subscription revenue collected using Tribute. Plaintiff suffered and continues to suffer lost subscription revenue from subscribers Novosad diverted and continues to divert from Plaintiff, as well as the costly infrastructure and prepaid AI-provider credits consumed by Novosad's subscribers.

## Count V – Civil Conspiracy

## (Against Naanaa and Novosad)

109. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-108 as if fully set forth herein.

110. Defendants formed and operated a conspiracy.

111. Naanaa and Novosad agreed to collaborate in a scheme to divert subscription fees from a sub-set of subscribers to Novosad using Tribute.

112. Naanaa and Novosad also agreed to collaborate in a scheme to divert subscribers away from Plaintiff after the subscribers had consumed significant infrastructure resources and

[5] Y Combinator is another accelerator that Naanaa applied to for funding for his own company while still employed by Plaintiff.

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189



Doc ID: 607b178d31f016497148a93204697db0bd20555f

pre-paid AI provider credits. They did so knowing that this would be particularly costly and damaging to Plaintiff because of the resources that subscribers consumed during the initial phase of use building their AI agent's memory.

113. In the case of Tribute Subscribers, these substantial resources were consumed from Plaintiff while subscription fees that would help defray the cost of those resources were diverted to Novosad.

114. Naanaa and Novosad agreed that Novosad would use her social media influence to recruit subscribers, some of whom would pay subscriber fees directly to Novosad, rather than Plaintiff, using Tribute.

115. Naanaa and Novosad agreed that Naanaa would facilitate servicing of the subscriptions, particularly those of Tribute Subscribers, using Plaintiff's resources and infrastructure.

116. Naanaa and Novosad agreed that Novosad would retain subscription fees collected from Tribute Subscribers rather than remit them to Plaintiff.

117. Defendants agreed to work together to divert subscribers Novosad recruited away from Plaintiff after those subscribers consumed significant amounts of Plaintiff's infrastructure resources as their AI agent's memory was being built in the initial phase of use.

118. Defendants engaged in wrongful conduct in furtherance of their conspiracy.

119. Novosad recruited Tribute and Stripe Subscribers using her social media influence.

120. Novosad retained fees collected from Tribute Subscribers for herself, knowing they would be consuming Plaintiff's resources.

121. Naanaa facilitated Tribute Subscribers' consumption of those resources knowing that the subscription fees they paid were not being remitted to Plaintiff.

122. The users Novosad recruited, particularly the Tribute Subscribers, could only access and be serviced on Portal with Naanaa's provisioning.

123. By at least spring of 2026, as Naanaa was plotting his exit from Portal to pursue his own competing solo venture, Naanaa and Novosad conspired to divert Plaintiff's subscribers

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189



Doc ID: 607b178d31f016497148a93204697db0bd20555f

away from Plaintiff, presumably so they could eventually be transferred to Naanaa's competing company.

124. When Plaintiff learned subscription fees were being diverted to Novosad, and Naanaa admitted Novosad had retained subscription fees she collected using Tribute on or around May 21, 2026; Plaintiff then immediately terminated access for any users who were not paying for a subscription using Stripe.

125. Around this same time, Novosad took to social media and made false and defamatory statements regarding Plaintiff. Specifically, on May 22-23, 2026, she used her own public Telegram channel (@novosadmarie) and stated the following: "The cofounder cut off …my boyfriend (the creator of the bot) …I can no longer guarantee the quality or safety of the product." This post had approximately 7,960 views as of May 21, 2026.

126. On May 27, 2026, Novosad posted on her channel a ready-made data-export prompt (a ready-made command) that received at least 4,580 views and told users to use that prompt to dump their full profile, memory, and diaries into a .txt file "to hand to another assistant or neural network." In other words, to hand to one of Plaintiff's competitors.

127. The data-export prompt Novosad published was the tool that provided Plaintiff's users with the ability to package their AI Agent's memory—the beneficial product built with Plaintiff's costly resources—and transfer it to a competing company. Combined with Novosad's comments about questionable data security with Plaintiff as well as providing a direct link to Naanaa's company, 01Labs, offering a service that is purportedly the same or similar to Plaintiff's, the prompt is an essential piece of Novosad's systematic funneling of subscribers away from Plaintiff and over to Naanaa's competing company. The prompt facilitates a quick and easy way for subscribers to almost instantaneously package and transport their AI-agent's memory.

128. The data-export prompt Novosad published so Plaintiff's users could export their data, could only be created with confidential and proprietary information that only Plaintiff's employees would be able to access. Without Naanaa, Novosad would not have the information or knowledge needed to write the data-export prompt herself. This was a collaborative effort

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189



Doc ID: 607b178d31f016497148a93204697db0bd20555f

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

between Novosad and Naanaa.

129. As a result of Defendants' conspiracy, seventy-nine percent (79%) of Portal's costly infrastructure, including $198,000 in prepaid AI provider credits intended to last several months, was consumed by Novosad's cohort of subscribers in seventy (70) days between March and May. In addition, Portal lost and continues to lose subscribers.

130. Plaintiff also lost subscription revenue that should have been paid to Plaintiff.

131. In addition, Plaintiff suffered reputational harm as a result of Novosad's publicly-made false statements regarding Plaintiff's data security, which cannot be quantified monetarily.

132. Plaintiff suffered damages as a result of the Defendants' wrongful conduct.

## Count VI - Conversion
## (against Novosad)

133. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-132 as if fully set forth herein.

134. Plaintiff had the right to subscription fees collected from subscribers using its technology and infrastructure.

135. Novosad substantially interfered with Plaintiff's collection of subscription fees by knowingly and intentionally collecting those fees using Tribute and keeping them for herself.

136. Novosad did not provide Plaintiff with access to the Tribute account where Plaintiff's subscription fees were being collected, and she did not remit the subscription fees to Plaintiff.

137. Plaintiff did not consent to Novosad collecting and retaining subscription fees from Tribute Subscribers.

138. As a direct and proximate result of Novosad's conduct, Plaintiff suffered economic damages.

## Count VII – Aiding and Abetting Conversion
## (Against Defendant Naanaa)

139. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-138 as if fully set forth herein.



Doc ID: 607b178d31f016497148a93204697db0bd20555f

140. The subscription fees Novosad collected from Tribute Subscribers were paid in exchange for use of Plaintiff's service.

141. Naanaa was an active participant in Novosad's scheme, as he personally granted and provided the Tribute subscribers' access on Plaintiff's infrastructure, deployed Novosad's monetization bundle to them, and integrated the off-platform payment rail — while concealing the resulting cost from Plaintiff's records.

142. Naanaa provided Tribute Subscribers with access to Plaintiff's services without Plaintiff's knowledge or consent.

143. Naanaa knew Novosad was retaining the subscription fees she collected from Tribute Subscribers.

144. As a direct and proximate result of Naanaa's aiding and abetting of Novosad's conversion, Plaintiff suffered economic damages in the form of lost subscription fees as well as costly infrastructure.

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

## Count VIII – Misappropriation of Trade Secrets

## 18 USC § 1836 et. seq.

## (Against Defendant Naanaa)

145. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-144 as if fully set forth herein.

146. Plaintiff possesses trade secrets, including but not limited to the following: (1) the Nexus engine — Plaintiff's proprietary long-term AI-memory engine and the proprietary knowledge base it has accumulated: Portal's non-public memory schema, source code, deployed configuration, tuned retrieval values, corpus taxonomy, privacy-tier and access-control design, and aggregated proprietary dataset; (2) the Portal One Plus non-public workspace file architecture — the internal per-subscriber file design (USER.md, MEMORY.md, and the memory/ daily files, their existence, names, roles, and layout, which a normal user never sees; and (3) the aggregated, structured dataset Plaintiff compiles across its subscriber base, together with the schema and architecture by which Plaintiff organizes it.

147. Plaintiff does not claim as trade secrets the general AI-memory concepts or



Doc ID: 607b178d31f016497148a93204697db0bd20555f

general methods publicly disclosed in its patents, including but not limited to the general methods of recording, summarizing, storing, similarity-retrieving, or importance-weight-ranking interaction data disclosed in U.S. Patent No. 12,640,924 B2, Claims 1–5.

148. The above-described technology/information derives independent economic value from not being generally known to other persons who can obtain economic value from its disclosure or use. Specifically, these trade secrets are essential to the service that Plaintiff provides to subscribers for a fee.

149. Plaintiff's subscribers are located across the United States as well as in foreign countries.

150. Plaintiff also owns several patents related to its technology.

151. Plaintiff's proprietary technology involves providing subscribers with a personal AI assistant — reachable through ordinary messaging apps such as Telegram and iMessage — that accumulates a private, lifelong memory of the user and performs tasks for them. The company's patented technology (six patents described in paragraph 10 above) is utilized and incorporated into the underlying engine: breaking a user's request into sub-tasks, selecting and ranking which specialized AI 'worker agents' should handle each part, enriching the request with the user's context, and verifying the agents' work.

152. The technology underlying the service Plaintiff provides in exchange for a fee was developed over the course of two to three years and could not operate without Plaintiff's patented technology.

153. Plaintiff has taken reasonable measures to keep its proprietary information secret, not the least of which is its CPR Agreement that employees, including Naanaa, were required to sign.

154. Upon information and belief and based on evidence Mr. Panchenko has uncovered since his departure, Naanaa's solo venture, 01Labs offers a virtually identical service as Plaintiff in direct competition with Plaintiff.

155. As set forth in detail below, Naanaa misappropriated Plaintiff's trade secrets.

156. Naanaa acquired knowledge of Plaintiff's trade secrets through his role as Chief

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189



Doc ID: 607b178d31f016497148a93204697db0bd20555f

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

Technology Officer.

157. The aggregate, structured dataset, schema, and architecture Plaintiff accumulates from subscribers is itself a trade secret.

158. When the data associated with a user's AI agent's memory is packaged in a .txt file, it derives independent economic value from not being generally known to other persons who can obtain economic value from its disclosure or use. The accumulation and retention of that data is of economic value to the user as well and is intended to keep subscribers with Plaintiff.

159. Naanaa used Plaintiff's confidential and proprietary methods for creating, structuring, and retaining its AI agents' memory — methods Plaintiff developed at substantial cost and does not make public — to write the data-export prompt, which he then provided to Novosad to publish. The prompt reflects insider knowledge of Plaintiff's internal memory architecture: it names Plaintiff's non-user-facing internal files (USER.md, MEMORY.md, and the daily-memory files) and directs the agent to use its system file-reading tools. When a user runs the prompt, it causes that user's own AI agent to assemble the user's personal archive — profile, long-term memory, and daily diaries — into a single file that can be carried to a competing product. The prompt is thus evidence of Naanaa's use of Plaintiff's confidential memory architecture. The protected trade secret is that underlying architecture itself — the engine, methods, and source code by which Plaintiff creates and retains AI-agent memory — which derives independent economic value from not being generally known, value reflected in the costly infrastructure and prepaid AI-provider credits required to build and operate it.

160. Additionally, on April 22, 2026, in an unauthorized session on Mr. Panchenko's laptop, Naanaa accessed Mr. Panchenko's confidential files containing trade secrets and produced a confidential architectural brief and a live inventory of 155,570 entries across 22 internal collections.

161. The Nexus is a key component Naanaa or anyone else would need to replicate Plaintiff's proprietary technology and directly compete with Plaintiff.

162. Given the proprietary nature of the Nexus architecture, Plaintiff had embedded

several confidential markers, which would allow Plaintiff to identify if it had been misappropriated and utilized by a competing venture.

163. On April 23, 2026, Naanaa obtained a "clean" copy without the confidentiality markers by asking Mr. Panchenko for it by making what appeared to be an innocuous request under the guise of needing it for a work-related purpose without disclosing he had already extracted the materials the day before. The clean copy would allow Mr. Naanaa to use the Nexus for an unauthorized purpose without detection.

164. Upon information and belief, Naanaa has also used and continues to use Plaintiff's patented technology for his own business without Plaintiff's authorization.

165. Statements on 01 Labs' website provide further evidence of Naanaa's use or intent of using Portal's Confidential Information, trade secrets, and proprietary methods. The services the company offers, and the promotional statements about the service mirror Portal's service almost identically.

166. 01 Labs appears to offer virtually identical AI services, uses very similar language as Portal's website and marketing materials to promote its service, and highlights the same or similar capabilities as Portal's product/service.

167. Portal's website states, "Personal AI Agent that actually knows who you are," and "People use their agents to launch businesses, track their health, prepare for job interviews, write books, manage clients, navigate the hardest decisions of their lives."

168. 01Labs' website states, "Your personal intelligence to shoot a brand campaign. make it go viral. launch a robot into space. open your store. land your first client. fix your sleep;" and "One AI with skills from the creators you follow."

169. On Portal's page for "Partners," it states, "Custom knowledge for businesses and partners… Your expertise working for everyone you refer."

170. On 01Labs' page for "Creators," it states, "get paid for being you. We build AI of your knowledge and skill. Your fans subscribe, you earn."

171. Portal's Partners page later describes, "How it Works" in three steps: "1) Upload your documents…2) Portal weaves them in… 3) Share your code."

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189



Doc ID: 607b178d31f016497148a93204697db0bd20555f

172. On 01Labs' Creators page, it also describes "how it works," in the same three steps: "1) share what you know… 2) we turn it into your AI… 3) your people subscribe with it."

173. Based on the similarities between 01Labs' description of its product and that of Plaintiff, it can be inferred that Naanaa is using Plaintiff's trade secrets described above.

174. It would be virtually impossible for Naanaa to build the technology needed to offer the same service as Plaintiff in a matter of weeks and without Plaintiff's proprietary methods.

175. As a direct and proximate result of Naanaa's misappropriation of Plaintiff's trade secrets, Plaintiff suffered economic harm and lost the competitive advantage it held as the developer of its proprietary and/or patented technology, which cannot be quantified monetarily.

176. Naanaa's misappropriation was willful and malicious such that exemplary damages are warranted pursuant to 18 U.S.C. §1836(b)(3)(C).

## Count IX - Breach of Fiduciary Duty

**(Against Defendant Naanaa)**

177. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-176 as if fully set forth herein.

178. A fiduciary relationship existed between Naanaa and Plaintiff, and Naanaa owed a fiduciary duty to Plaintiff.

179. Naanaa owed duties of loyalty, care, and good faith to Plaintiff.

180. Naanaa breached the fiduciary duty he owed to Plaintiff by using or taking

Plaintiff's patented technology and confidential and proprietary information with the intent of using it for his own and or Novosad's financial gain, rather than that of Plaintiff.

181. Naanaa breached the fiduciary duty he owed to Plaintiff by developing a solo venture intended to compete directly with Plaintiff while still employed by Plaintiff.

182. Naanaa misrepresenting himself as the sole founder of Plaintiff and the owner of the patents that Plaintiff actually owned violated the duty of good faith he owed to Plaintiff.

183. Naanaa used Plaintiff's resources and infrastructure for purposes adverse to Plaintiff's interests.

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189



Doc ID: 607b178d31f016497148a93204697db0bd20555f

184. Specifically, Naanaa facilitated Novosad's scheme to divert subscription fees from Plaintiff in violation of the duties owed to Plaintiff.

185. Naanaa also breached the fiduciary duty and duty of good faith owed to Plaintiff when he used Plaintiff's own confidential and proprietary information, which was only to be used in furtherance of Plaintiff's business, to pitch investors on his solo venture, 01Labs, in direct competition with Plaintiff, which Naanaa knew Plaintiff intended to solicit.

186. Naanaa breached his fiduciary duty to Plaintiff by taking Plaintiff's patented technology and confidential and proprietary information and using it with his own company in direct competition with Plaintiff.

187. Plaintiff also suffered reputational harm and lost business opportunities, including with investors, as a result of Naanaa's breaches.

188. Plaintiff also suffered irreparable harm that cannot be quantified due to the loss of the competitive edge Plaintiff once held, which was a direct and proximate result of losing the exclusive use of its patent protected technology.

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

## Count X – Civil Claim for Violation of Comprehensive Computer Data Access and Fraud Act

## Cal Pen Code §502

### (Against Defendant Naanaa)

189. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-188 as if fully set forth herein.

190. Plaintiff seeks civil damages and reasonable attorney's fees pursuant to Cal. Pen. Code §502(e) for Naanaa's multiple violations of Cal. Pen. Code §502(c)(1), (2) and (4).

191. Plaintiff owns all data on its computers and network as set forth in the CPR Agreement.

192. Naanaa knowingly accessed without Plaintiff's permission Plaintiff's data, computer, and computer network in order to wrongfully obtain data.

193. Obtaining data from Plaintiff's network for purposes except as required in the performance of his authorized employment duties is prohibited by the terms of the CPR



Doc ID: 607b178d31f016497148a93204697db0bd20555f

Agreement.

194. Additionally, Naanaa knowingly without Plaintiff's permission took, copied and made use of data from Plaintiff's computer and computer network.

195. Naanaa took four of Plaintiff's confidential profile files, developed by Plaintiff with Plaintiff's technology and built a 629-line negotiation playbook from them. Naanaa used this playbook against Plaintiff's CEO in a negotiation to increase his equity stake.

196. Plaintiff's proprietary methods that Naanaa copied from Plaintiff's network remain in Naanaa's hands.

197. Naanaa accessed and covertly extracted Plaintiff's core "Nexus" without Plaintiff's authorization.

198. Naanaa also accessed and provided approximately forty (40) of Plaintiff's proprietary psychological-profiles, generated with Plaintiff's confidential methodology to individuals outside the company without Plaintiff's consent.

199. Naanaa modified Plaintiff's 'founders.json' to add Novosad — a person Plaintiff never employed — conferring free, top-tier 'Founding Member' access to the paid product at no charge.

200. Naanaa's accessing and taking Plaintiff's confidential and proprietary data, algorithms, and programs caused Plaintiff to suffer economic damages in the form of loss of potential investment capital and loss of its competitive advantage in the marketplace.

201. As a result of Naanaa's multiple and repeated violations of Cal. Pen. Code §502(c), Plaintiff seeks compensatory damages, injunctive relief, and other equitable relief as well as reasonable attorney's fees.

## Count XI - Unfair Competition in Violation of Cal Bus & Prof Code § 17200 (against Defendants Naanaa and Novosad)

202. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-201 as if fully set forth herein.

203. Defendants engaged in unlawful, unfair, and fraudulent business acts or practices in violation of Cal. Bus. Prof. Code §17200.

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189



Doc ID: 607b178d31f016497148a93204697db0bd20555f

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

**Unlawful Acts**

204. Naanaa engaged in unfair competition in violation of Cal. Bus. Prof. Code §17200 by violating both California state law and federal law.

205. Naanaa violated Cal. Pen. Code §502(c).

206. Naanaa knowingly accessed, without Plaintiff's permission, Plaintiff's data, computer, and computer network in order to wrongfully obtain data.

207. Naanaa Obtained data from Plaintiff's network for purposes except as required in the performance of his authorized employment duties is prohibited by the terms of the CPR Agreement.

208. Additionally, Naanaa knowingly without Plaintiff's permission took, copied and made use of data from Plaintiff's computer and computer network.

209. Naanaa took four of Plaintiff's confidential profile files, developed by Plaintiff with Plaintiff's technology and built a 629-line negotiation playbook from them. Naanaa used this playbook against Plaintiff's CEO in a negotiation to increase his equity stake in Plaintiff.

210. Plaintiff's proprietary methods that Naanaa copied from Plaintiff's network remain in Naanaa's hands.

211. Naanaa accessed and covertly extracted Plaintiff's core "Nexus" without Plaintiff's authorization.

212. Naanaa also accessed and provided approximately forty of Plaintiff's proprietary psychological-profiles, generated with Plaintiff's confidential methodology to individuals outside the company without Plaintiff's consent.

213. Without authorization, Naanaa modified Plaintiff's 'founders.json' to add Novosad — a person Plaintiff never employed — conferring free, top-tier 'Founding Member' access to the paid product at no charge.

214. Naanaa and Novosad violated federal patent law set forth in 35 U.S.C. §271.

215. Defendant Naanaa and Novosad infringed Plaintiff's patents when they provided access to Plaintiff's patented technology in exchange for a subscription fee that Novosad retained without Plaintiff's authorization. The service subscribers received used or incorporated



Doc ID: 607b178d31f016497148a93204697db0bd20555f

technology covered by the six patents Plaintiff owns.

216. Naanaa granted Novosad's subscribers direct access to Plaintiff's patented technology and service without Plaintiff's consent.

217. Novosad knew she was collecting subscription fees without Plaintiff's authorization and that Naanaa was providing access to Plaintiff's patented technology without authorization in exchange for the subscription fees she was collecting.

218. Upon information and belief, Naanaa has used, and continues or threatens to use, Plaintiff's patented technology for his own business without Plaintiff's authorization.

**Unfair Acts**

219. The above-described violations of state and federal law constitute unfair business practices.

220. Naanaa and Novosad collaborated in a scheme to divert subscription fees owed to Plaintiff to Novosad instead at Plaintiff's expense.

221. In collaboration with Naanaa, Novosad leveraged her social media influence and network to recruit subscribers to Plaintiff's service.

222. Naanaa facilitated the servicing of these subscriptions from within Plaintiff's company.

223. Novosad collected subscription fees from Tribute Subscribers and retained those fees rather than remitting them to Plaintiff, causing Plaintiff quantifiable economic harm due to the subscription fees it was not able to collect.

224. Naanaa assisted Novosad by facilitating the servicing of the Tribute Subscribers subscriptions, knowing Novosad was retaining the subscription fees from those users.

225. Naanaa and Novosad also conspired to divert Plaintiff's subscribers away from Plaintiff and to a competitor, presumably the competing venture Naanaa was developing, 01Labs.

226. Defendants diverted those subscribers and their data files, built with Plaintiff's costly infrastructure and prepaid AI-provider credits, just as those subscribers were poised to become profitable to Plaintiff.

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189



Doc ID: 607b178d31f016497148a93204697db0bd20555f

227. The subscribers recruited by Novosad accounted for roughly 79% of Plaintiff's infrastructure usage between March and May of 2026. That infrastructure was intended to last six to twelve months.

228. In total, Novosad's cohort of subscribers, a portion of which were paying subscription fees to Novosad instead of Plaintiff, cost Plaintiff roughly $198,000 in prepaid AI-provider credits, which Plaintiff intended to last six to twelve months, in seventy (70) days.

229. Defendant Novosad used her social media influence and made false and defamatory statements regarding Plaintiff's data security in furtherance of Defendants' scheme.

230. Novosad also instructed customers to export all data in a format that would allow it to be easily transferred to a competing company.

231. Critically, Novosad published the data-export prompt Naanaa created or assisted in creating. The prompt is a ready-made data-export command that a user can paste into that user's own Portal agent. The command causes the user's agent to assemble the user's own profile, long-term memory, and daily diary files into a single portable archive that can be taken to a competitor.

232. Plaintiff has suffered quantifiable economic harm due to subscribers downloading their data file, and in some cases, cancelling their subscription and or seeking refunds.

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

## **Count XII – Intentional Interference With Prospective Economic Relations (Defendants Naanaa and Novosad)**

233. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-232 as if fully set forth herein.

234. Defendants Novosad and Naanaa intentionally interfered with Plaintiff's relationship with its subscribers by encouraging and facilitating subscribers' departure from Plaintiff's services.

235. As of May 19, 2026, Plaintiff had 366 subscribers paying for Plaintiff's service.

236. Subscribers contractually agreed to pay a monthly fee to Plaintiff in exchange for Plaintiff's service.

237. Defendants Naanaa and Novosad were both aware and knew of Plaintiff's



Doc ID: 607b178d31f016497148a93204697db0bd20555f

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

economically beneficial relationship with its subscribers.

238. Novosad wrongfully collected and retained subscription fees from users without Plaintiff's knowledge or consent, and Naanaa facilitated the servicing of these subscriptions with Plaintiff's resources and technology.

239. Additionally, after Naanaa was terminated and the Tribute Subscribers lost access to Plaintiff's service, Naanaa and Novosad engaged in an intentional and concerted effort to divert Plaintiff's subscribers away from Plaintiff and to Naanaa's competing venture instead.

240. Defendants were able to accomplish this in part because of Novosad's direct line of communication with many of Plaintiff's subscribers— the social media platforms and networks she used to recruit those subscribers.

241. Using her social media presence, Novosad published false and misleading statements about Plaintiff's data security.

242. Novosad published these statements, knowing they were misleading, as she had no reason to believe that Plaintiff's ability to keep subscriber data secure had changed.

243. Naanaa acted in concert with Novosad by using Plaintiff's core trade secret, its Nexus, which Naanaa wrongfully took and that was then used to create the prompt Novosad published across her social media channels, encouraging subscribers to use the prompt to facilitate the instantaneous packaging of their data in a portable form in order to take it to Defendant Naanaa's competing company—01Labs. In furtherance of her efforts to divert Portal subscribers to 01Labs, Novosad also provided her social media audience with a bio-link to the 01Labs as soon as its landing page was operational.

244. Defendants' intent to divert subscribers away from Plaintiff and to Naanaa's company instead, is clearly conveyed in Novosad's messaging that accompanies the prompt and bio link.

245. Defendants knew that Novosad publishing the statements, prompt, and bio link together in her messages to her social media network would disrupt the relationship Plaintiff had with its subscribers.

246. At least twelve (12) of Plaintiff's former subscribers cited Novosad's public



Doc ID: 607b178d31f016497148a93204697db0bd20555f

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

messaging as the reason for cancelling their subscription. For example, on May 28, 2026, one of Portal's customers emailed Portal demanding deletion and refund of his subscription and his stated reason for doing so was the public statements made by Novosad.

247. Upon information and belief, so long as Novosad continues publishing the prompt and bio-link with statements questioning Plaintiff's ability to keep subscriber data secure, Plaintiff will continue to lose subscribers. This is evidenced by the fact that the prompt described above has been pasted at least seventy-three (73) times and twenty-eight (28) exports have been completed.

248. Defendants' wrongful conduct, namely wrongfully diverting subscribers away from Plaintiff to Naanaa's separately owned company, 01Labs instead, was intended to disrupt the relationship Plaintiff had with these subscribers.

249. Defendants knew that disruption of the relationship between Plaintiff and the subscribers was certain or substantially certain to occur as a result of Novosad's messaging on social media intended to divert Plaintiff's subscribers to Defendant's company, 01Labs.

250. Plaintiff's contractual relationship with the subscribers was in fact disrupted by Defendants diverting Plaintiff's subscribers to Defendant Naanaa's company, 01Labs, providing a financial benefit to Naanaa.

251. As a direct and proximate result of Defendants' disruption of the agreements and aforementioned conduct and diversion of subscribers, Plaintiff was harmed financially and economically with the loss of Plaintiff's subscribers and will continue to face severe economic and financial losses as a result of Defendants' conduct as it loses more subscribers.

## XIII - Intentional Interference With Contractual Relations
## (Defendants Naanaa and Novosad)

252. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-251 as if fully set forth herein.

253. Plaintiff had a contract with each of its subscribers in the form of a user agreement. Subscribers agreed to the terms of the user agreement and paid the requisite subscription fee in exchange for Portal providing access to its product and servicing the



Doc ID: 607b178d31f016497148a93204697db0bd20555f

subscription.

254. Defendants knew Plaintiff had a contract with each of its subscribers.

255. Defendants intended to and intentionally disrupted the performance of Portal's contract with its subscribers or knew that disruption of performance was certain or substantially certain to occur.

256. After Naanaa was terminated, Naanaa and Novosad intended to, and further engaged in an intentional and concerted effort to divert Plaintiff's subscribers away from Plaintiff and to Naanaa's competing venture, 01Labs instead. Defendants did so knowing this diversion would disrupt Portal's ongoing performance pursuant to the terms of it month-to-month contract with subscribers.

257. Defendants were able to accomplish this in part because of Novosad's direct line of communication with many of Plaintiff's subscribers— the social media platforms and networks she used to recruit those subscribers.

258. Using her social media presence, Novosad published false and misleading statements about the security of subscriber data at Portal and encouraging them to leave Portal.

259. Novosad published these statements, knowing they were misleading, as she had no knowledge that Plaintiff's methods for keeping subscriber data secure had changed.

260. Naanaa acted in concert with Novosad by using Plaintiff's core trade secret, its Nexus, which Naanaa wrongfully took and was then used to create the prompt Novosad published across her social media channels, encouraging subscribers to use the prompt to facilitate the instantaneous packaging of their data in a portable form in order to take it to a competing company— Naanaa's very own 01Labs. Novosad even provided her social media audience with a bio-link to the company.

261. Defendants' intent to divert subscribers away from Plaintiff and to Naanaa's company instead, is clearly conveyed in Novosad's messaging that accompanies the prompt and bio link.

262. Defendants knew that Novosad publishing the statements, prompt, and bio link together in her messages to her social media network would lead to subscribers cancelling their

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189



Doc ID: 607b178d31f016497148a93204697db0bd20555f

subscriptions with Plaintiff, disrupting Plaintiff's and the subscribers' performance of the terms of their contract with each other.

263. This is evidenced by the fact that the prompt described above has been pasted at least seventy-three (73) times and twenty-eight (28) exports have been completed.

264. As a direct and proximate result of Naanaa's theft of Plaintiff's proprietary Nexus, which was needed and used to create a data-expert prompt, combined with Novosad publishing misleading statements about Portal, encouraging them to take their data to a competing company, and providing the prompt and bio-link needed to do so, Plaintiff lost and continues to lose subscribers.

265. At least twelve (12) of Plaintiff's subscribers who cancelled their subscriptions cited Novosad's public messaging as the reason for doing so, causing harm to plaintiffs.

266. Upon information and belief, so long as Novosad continues publishing the prompt, bio-link, and false and misleading statements questioning Plaintiff's ability to keep subscriber data secure, Plaintiff will continue to lose subscribers and suffer financial and economic harm as a result.

267. Defendants' actions in the aforementioned paragraphs, namely the actions intended to divert Plaintiff's subscribers to 01Labs was a substantial factor in causing Plaintiff financial and economic harm due to the loss of subscribers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

1. Compensatory damages against all defendants in an amount to be determined at trial, including but not limited to lost subscription revenue, loss of future subscription revenue, infrastructure costs, and reputational harm;

2. Treble damages against defendant Naanaa for willful patent infringement pursuant to 35 U.S.C. § 284;

3. Exemplary damages pursuant to 18 U.S.C. §1836(b)(3)(C) for Defendants' willful and malicious misappropriation of trade secrets;

4. Attorney's fees pursuant to Cal. Pen. Code §502(e) and attorney's fees and costs

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189



Doc ID: 607b178d31f016497148a93204697db0bd20555f

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

pursuant to 35 U.S.C. § 285;

5. Punitive damages pursuant to California Civil Code § 3294 for Defendants' intentional fraud, oppression, and malice;

6. An order requiring an accounting to determine the full extent of subscription fees collected by defendant Novosad and profits obtained by defendant Naanaa through their wrongful conduct;

7. Restitution for all fees wrongfully collected by Defendant Novosad and for loss of infrastructure and prepaid AI-provider credits consumed by subscribers Defendants diverted away from Plaintiff;

8. Temporary Restraining Order and Injunctive relief relating to Defendants' unauthorized use of Plaintiff's Confidential Information, proprietary methods and trade secrets;

9. Pre-judgment and post-judgment interest at the maximum rate permitted by law;

10. Such other and further relief as the Court deems just and proper.

Dated: July 1, 2026

**INFINITY LAW GROUP LLP**

By: *__/s/Meghan E. McCormick__*

S. Ashar Ahmed, Esq.
Meghan E. McCormick, Esq.
Sana Abbasi, Esq.
Attorneys for Plaintiff
PORTAL AI, INC.
**INFINITY LAW GROUP LLP**
1020 Aileen Street
Lafayette, CA 94549
Telephone: (925) 732-1188
Facsimile: (415) 426-3581
Email: aahmed@infinitylawca.com
Email: mmccormick@infinitylawca.com
Email: sabbasi@infinitylawca.com



Doc ID: 607b178d31f016497148a93204697db0bd20555f

INFINITY LAW GROUP LLP
1020 Aileen Street
Lafayette, California 94549
Tel: (925) 732-1188
Fax: (925) 732-1189

## VERIFICATION

I, Volodymyr Panchenko, declare and state as follows:

1. I am over the age of eighteen (18) years. I am the Chief Executive Officer and Chief Financial Officer of PORTAL AI INC (the "Company"), and I am authorized to make this verification on behalf of the Company.

2. My business address is 541 Jefferson Avenue, Suite 100, Redwood City, CA 94063.

3. I have personal knowledge of the matters stated in this verification, and if called as a witness, I could and would competently testify to the matters stated herein, except as to those matters stated on information and belief, and as to those matters I believe them to be true.

4. This verification is made for filing in the United States District Court for the Central District of California in connection with the following pleading/paper:

**VERIFIED AMENDED COMPLAINT FOR:**
**Count I – Patent Infringement in Violation of 35 USC § 271;**
**Count II – Inducement of Patent Infringement;**
**Count III – Breach of Contract;**
**Count IV – Fraudulent Concealment Cal. Civ. Code §§ 1709-1710;**
**Count V – Civil Conspiracy;**
**Count VI – Conversion;**
**Count VII – Aiding and Abetting Conversion;**
**Count VIII – Misappropriation of Trade Secrets 18 USC § 1836-1839 et. seq.;**
**Count IX - Breach of Fiduciary Duty;**
**Count X – Civil Claim for Violation of Comprehensive Computer Data Access and Fraud Act, Cal Pen Code §502;**
**Count XI - Unfair Competition in Violation of Cal Bus & Prof Code § 17200;**
**Count XII – Intentional Interference with Prospective Economic Advantage;**
**Count XIII - Intentional Interference with Contractual Relations** filed or to be filed by PORTAL AI INC. in the above-captioned action.

5. I have read the Verified Filing and know its contents.

6. The statements in the Verified Filing are true and correct of my own knowledge, except as to matters stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 1, 2026, at Redwood City, California.

Volodymyr Panchenko

Volodymyr Panchenko
Chief Executive Officer
Chief Financial Officer



Doc ID: 607b178d31f016497148a93204697db0bd20555f