Edwin H. Wheeler (Bar No. 189991)
Michael B. Marion (*pro hac vice* forthcoming)
**Intelink Law Group, P.C.**
23 Corporate Plaza Drive
Suite 150
Newport Beach, CA 92660
(866) 786-4036
ewheeler@intelinklaw.com
mmarion@intelinklaw.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PORTAL AI, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>MOHAMMAD NAANAA, an individual, and MARIIA NOVOSAD, a/k/a MARIE NOVOSAD, an individual,<br><br>Defendants. | Case No. 2:26-cv-06519-WLH (SKx)<br><br>**DEFENDANTS' AMENDED ANSWER AND COUNTERCLAIMS TO VERIFIED AMENDED COMPLAINT**<br><br>Judge: Hon. Wesley L. Hsu |
| MOHAMMAD NAANAA, an individual, and MARIIA NOVOSAD, an individual,<br><br>Counterclaimants,<br><br>v.<br><br>PORTAL AI, INC., a Delaware corporation, and VOLODYMYR PANCHENKO, an individual,<br><br>Counterclaim-Defendants. | |

Defendants Mohammad Naanaa ("Naanaa") and Mariia Novosad, a/k/a Marie Novosad ("Novosad") (collectively, "Defendants"), by and through their undersigned counsel, hereby answer the Verified Amended Complaint (the "Complaint") of Plaintiff Portal AI, Inc. ("Plaintiff") as follows. Except as expressly admitted below, Defendants deny each and every allegation contained in the Complaint, including the introductory paragraph and all headings and subheadings used therein, which Defendants understand to be argumentative and not allegations of fact requiring a response, and to which no response is required. To the extent a response is deemed required as to any heading or subheading, Defendants deny the same. Defendants respond to the correspondingly numbered paragraphs of the Complaint as follows.

## PARTIES

1. Answering Paragraph 1 of the Complaint, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, deny each and every allegation contained in Paragraph 1.

2. Answering Paragraph 2 of the Complaint, Defendants admit the allegations contained therein.

3. Answering Paragraph 3 of the Complaint, Defendants admit the allegations contained therein.

## JURISDICTION AND VENUE

4. Paragraph 4 of the Complaint states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendants deny each and every allegation contained in Paragraph 4.

5. Paragraph 5 of the Complaint states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendants deny each and every allegation contained in Paragraph 5.

6. Answering Paragraph 6 of the Complaint, Defendants admit that, solely for purposes of this action, they do not contest this Court's exercise of personal jurisdiction over them. Defendants deny the remaining allegations contained in Paragraph 6, including any characterization of the legal basis therefor.

7. Paragraph 7 of the Complaint states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendants deny each and every allegation contained in Paragraph 7.

## STATEMENT OF FACTS

8. Defendants deny each and every allegation contained in Paragraph 8 of the Complaint.

9. Defendants deny each and every allegation contained in Paragraph 9 of the Complaint.

10. Answering Paragraph 10 of the Complaint, Defendants state that the patents referenced therein are public documents that speak for themselves, and Defendants deny any characterization thereof that is inconsistent with their actual language. Defendants deny the remaining allegations contained in Paragraph 10, including any assertion that Defendants' conduct, or Plaintiff's own technology, is covered by any valid and enforceable claim of the referenced patents.

11. Answering Paragraph 11 of the Complaint, Defendants state that the patent documents referenced therein are public documents that speak for themselves, and Defendants deny any characterization thereof that is inconsistent with their actual language. Defendants deny the remaining allegations contained in Paragraph 11, including any assertion that Defendants' conduct, or Plaintiff's own technology, is covered by any valid and enforceable claim of the referenced patents.

**Defendant Naanaa**

12. Answering Paragraph 12 of the Complaint, Defendants admit that Defendant Naanaa is a former employee of Plaintiff who served as Plaintiff's Chief Technology Officer. Defendants lack knowledge or information sufficient to form

a belief as to the truth of the remaining allegations contained in Paragraph 12 and, on that basis, deny the same.

13. Defendants deny each and every allegation contained in Paragraph 13 of the Complaint.

14. Answering Paragraph 14 of the Complaint, Defendants admit that Defendant Naanaa executed a document titled Confidentiality and Proprietary Rights Agreement on or about August 19, 2024, a copy of which is attached to the Complaint as Exhibit A. Defendants state that the referenced document speaks for itself, deny any characterization thereof that is inconsistent with its actual terms, and deny the remaining allegations contained in Paragraph 14.

15. Answering Paragraph 15 of the Complaint, Defendants state that the document(s) referenced therein speak for themselves, and Defendants deny any characterization thereof that is inconsistent with their actual terms. Defendants deny the remaining allegations contained in Paragraph 15.

16. Answering Paragraph 16 of the Complaint, Defendants state that the document(s) referenced therein speak for themselves, and Defendants deny any characterization thereof that is inconsistent with their actual terms. Defendants deny the remaining allegations contained in Paragraph 16.

17. Answering Paragraph 17 of the Complaint, Defendants state that the document(s) referenced therein speak for themselves, and Defendants deny any characterization thereof that is inconsistent with their actual terms. Defendants deny the remaining allegations contained in Paragraph 17.

18. Answering Paragraph 18 of the Complaint, Defendants state that the document(s) referenced therein speak for themselves, and Defendants deny any characterization thereof that is inconsistent with their actual terms. Defendants deny the remaining allegations contained in Paragraph 18.

19. Answering Paragraph 19 of the Complaint, Defendants admit that Defendant Naanaa's employment with Plaintiff ended effective May 21, 2026. Defendants deny the remaining allegations contained in Paragraph 19, including any characterization that Naanaa's termination was "for cause."

20. Defendants deny each and every allegation contained in Paragraph 20 of the Complaint.

21. Defendants deny each and every allegation contained in Paragraph 21 of the Complaint.

22. Defendants deny each and every allegation contained in Paragraph 22 of the Complaint.

23. Defendants deny each and every allegation contained in Paragraph 23 of the Complaint.

**<u>Defendant Mariia Novosad</u>**

24. Answering Paragraph 24 of the Complaint, Defendants admit that Defendant Novosad also goes by the name Marie Novosad. Defendants deny the remaining allegations contained in Paragraph 24.

25. Defendants deny each and every allegation contained in Paragraph 25 of the Complaint.

26. Defendants deny each and every allegation contained in Paragraph 26 of the Complaint.

27. Defendants deny each and every allegation contained in Paragraph 27 of the Complaint.

28. Defendants deny each and every allegation contained in Paragraph 28 of the Complaint.

29. Defendants deny each and every allegation contained in Paragraph 29 of the Complaint.

30. Defendants deny each and every allegation contained in Paragraph 30 of the Complaint.

31. Defendants deny each and every allegation contained in Paragraph 31 of the Complaint.

32. Defendants deny each and every allegation contained in Paragraph 32 of the Complaint.

33. Defendants deny each and every allegation contained in Paragraph 33 of the Complaint.

34. Defendants deny each and every allegation contained in Paragraph 34 of the Complaint.

35. Defendants deny each and every allegation contained in Paragraph 35 of the Complaint.

36. Defendants deny each and every allegation contained in Paragraph 36 of the Complaint.

37. Defendants deny each and every allegation contained in Paragraph 37 of the Complaint.

38. Defendants deny each and every allegation contained in Paragraph 38 of the Complaint.

39. Defendants deny each and every allegation contained in Paragraph 39 of the Complaint.

40. Defendants deny each and every allegation contained in Paragraph 40 of the Complaint.

41. Defendants deny each and every allegation contained in Paragraph 41 of the Complaint.

42. Defendants deny each and every allegation contained in Paragraph 42 of the Complaint.

43. Defendants deny each and every allegation contained in Paragraph 43 of the Complaint.

44. Defendants deny each and every allegation contained in Paragraph 44 of the Complaint.

45. Defendants deny each and every allegation contained in Paragraph 45 of the Complaint.

46. Defendants deny each and every allegation contained in Paragraph 46 of the Complaint.

47. Defendants deny each and every allegation contained in Paragraph 47 of the Complaint.

48. Defendants deny each and every allegation contained in Paragraph 48 of the Complaint.

49. Defendants deny each and every allegation contained in Paragraph 49 of the Complaint.

50. Defendants deny each and every allegation contained in Paragraph 50 of the Complaint.

## CLAIMS FOR RELIEF

### Count I – Patent Infringement in Violation of 35 U.S.C. § 271 (against Defendants Naanaa and Novosad)

51. Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 50 of the Complaint as though fully set forth herein.

52. Paragraph 52 of the Complaint states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendants deny each and every allegation contained in Paragraph 52.

53. Defendants deny each and every allegation contained in Paragraph 53 of the Complaint.

54. Defendants deny each and every allegation contained in Paragraph 54 of the Complaint.

55. Defendants deny each and every allegation contained in Paragraph 55 of the Complaint.

56. Defendants deny each and every allegation contained in Paragraph 56 of the Complaint.

57. Defendants deny each and every allegation contained in Paragraph 57 of the Complaint.

58. Defendants deny each and every allegation contained in Paragraph 58 of the Complaint.

59. Defendants deny each and every allegation contained in Paragraph 59 of the Complaint.

**Count II – Inducement of Patent Infringement**
**(against Defendant Novosad)**

60. Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 59 of the Complaint as though fully set forth herein.

61. Defendants deny each and every allegation contained in Paragraph 61 of the Complaint.

62. Defendants deny each and every allegation contained in Paragraph 62 of the Complaint.

63. Defendants deny each and every allegation contained in Paragraph 63 of the Complaint.

64. Defendants deny each and every allegation contained in Paragraph 64 of the Complaint.

65. Defendants deny each and every allegation contained in Paragraph 65 of the Complaint.

66. Defendants deny each and every allegation contained in Paragraph 66 of the Complaint.

67. Defendants deny each and every allegation contained in Paragraph 67 of the Complaint.

68. Defendants deny each and every allegation contained in Paragraph 68 of the Complaint.

69. Defendants deny each and every allegation contained in Paragraph 69 of the Complaint.

70. Defendants deny each and every allegation contained in Paragraph 70 of the Complaint.

71. Defendants deny each and every allegation contained in Paragraph 71 of the Complaint.

**Count III – Breach of Contract**

**(against Defendant Naanaa)**

72. Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 71 of the Complaint as though fully set forth herein.

73. Answering Paragraph 73 of the Complaint, Defendants admit that Defendant Naanaa was first employed by Plaintiff in September 2023 and that his role as Chief Technology Officer was later set forth in a written Employment Agreement dated June 14, 2024, a copy of which is attached to the Complaint as Exhibit B. Defendants state that the referenced document speaks for itself, deny any characterization thereof that is inconsistent with its actual terms, and deny the remaining allegations contained in Paragraph 73.

74. Answering Paragraph 74 of the Complaint, Defendants state that the document(s) referenced therein speak for themselves, and Defendants deny any characterization thereof that is inconsistent with their actual terms. Defendants deny the remaining allegations contained in Paragraph 74.

75. Defendants deny each and every allegation contained in Paragraph 75 of the Complaint.

76. Defendants deny each and every allegation contained in Paragraph 76 of the Complaint.

77. Answering Paragraph 77 of the Complaint, Defendants admit that Defendant Naanaa signed a document titled Employee Handbook on or about December 14, 2024, a copy of which is attached to the Complaint as Exhibit C. Defendants state that the referenced document speaks for itself, deny any

characterization thereof that is inconsistent with its actual terms, and deny the remaining allegations contained in Paragraph 77.

78. Defendants deny each and every allegation contained in Paragraph 78 of the Complaint.

79. Defendants deny each and every allegation contained in Paragraph 79 of the Complaint.

80. Defendants deny each and every allegation contained in Paragraph 80 of the Complaint.

81. Defendants deny each and every allegation contained in Paragraph 81 of the Complaint.

82. Defendants deny each and every allegation contained in Paragraph 82 of the Complaint.

83. Defendants deny each and every allegation contained in Paragraph 83 of the Complaint.

84. Defendants deny each and every allegation contained in Paragraph 84 of the Complaint.

85. Defendants deny each and every allegation contained in Paragraph 85 of the Complaint.

86. Defendants deny each and every allegation contained in Paragraph 86 of the Complaint.

87. Defendants deny each and every allegation contained in Paragraph 87 of the Complaint.

88. Defendants deny each and every allegation contained in Paragraph 88 of the Complaint.

89. Defendants deny each and every allegation contained in Paragraph 89 of the Complaint.

90. Defendants deny each and every allegation contained in Paragraph 90 of the Complaint.

91. Defendants deny each and every allegation contained in Paragraph 91 of the Complaint.

92. Defendants deny each and every allegation contained in Paragraph 92 of the Complaint.

93. Answering Paragraph 93 of the Complaint, Defendants admit that Defendant Naanaa left the laptop referenced in this paragraph at Plaintiff's office before departing for a trip and prior to his termination. Defendants deny the remaining allegations contained in Paragraph 93.

94. Defendants deny each and every allegation contained in Paragraph 94 of the Complaint.

95. Defendants deny each and every allegation contained in Paragraph 95 of the Complaint.

96. Defendants deny each and every allegation contained in Paragraph 96 of the Complaint.

97. Defendants deny each and every allegation contained in Paragraph 97 of the Complaint.

98. Defendants deny each and every allegation contained in Paragraph 98 of the Complaint.

99. Defendants deny each and every allegation contained in Paragraph 99 of the Complaint.

**Count IV – Fraudulent Concealment, Cal. Civ. Code §§ 1709–1710**
**(against Defendant Naanaa)**

100. Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 99 of the Complaint as though fully set forth herein.

101. Defendants deny each and every allegation contained in Paragraph 101 of the Complaint.

102. Defendants deny each and every allegation contained in Paragraph 102 of the Complaint.

103. Defendants deny each and every allegation contained in Paragraph 103 of the Complaint.

104. Defendants deny each and every allegation contained in Paragraph 104 of the Complaint.

105. Defendants deny each and every allegation contained in Paragraph 105 of the Complaint.

106. Defendants deny each and every allegation contained in Paragraph 106 of the Complaint.

107. Defendants deny each and every allegation contained in Paragraph 107 of the Complaint.

108. Defendants deny each and every allegation contained in Paragraph 108 of the Complaint.

**Count V – Civil Conspiracy**

**(against Defendants Naanaa and Novosad)**

109. Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 108 of the Complaint as though fully set forth herein.

110. Defendants deny each and every allegation contained in Paragraph 110 of the Complaint.

111. Defendants deny each and every allegation contained in Paragraph 111 of the Complaint.

112. Defendants deny each and every allegation contained in Paragraph 112 of the Complaint.

113. Defendants deny each and every allegation contained in Paragraph 113 of the Complaint.

114. Defendants deny each and every allegation contained in Paragraph 114 of the Complaint.

115. Defendants deny each and every allegation contained in Paragraph 115 of the Complaint.

116. Defendants deny each and every allegation contained in Paragraph 116 of the Complaint.

117. Defendants deny each and every allegation contained in Paragraph 117 of the Complaint.

118. Defendants deny each and every allegation contained in Paragraph 118 of the Complaint.

119. Defendants deny each and every allegation contained in Paragraph 119 of the Complaint.

120. Defendants deny each and every allegation contained in Paragraph 120 of the Complaint.

121. Defendants deny each and every allegation contained in Paragraph 121 of the Complaint.

122. Defendants deny each and every allegation contained in Paragraph 122 of the Complaint.

123. Defendants deny each and every allegation contained in Paragraph 123 of the Complaint.

124. Defendants deny each and every allegation contained in Paragraph 124 of the Complaint.

125. Answering Paragraph 125 of the Complaint, Defendants state that the statement(s) and/or publication(s) referenced therein speak for themselves, and Defendants deny any characterization thereof that is inconsistent with their actual content. Defendants deny the remaining allegations contained in Paragraph 125.

126. Answering Paragraph 126 of the Complaint, Defendants state that the statement(s) and/or publication(s) referenced therein speak for themselves, and

Defendants deny any characterization thereof that is inconsistent with their actual content. Defendants deny the remaining allegations contained in Paragraph 126.

127. Defendants deny each and every allegation contained in Paragraph 127 of the Complaint.

128. Defendants deny each and every allegation contained in Paragraph 128 of the Complaint.

129. Defendants deny each and every allegation contained in Paragraph 129 of the Complaint.

130. Defendants deny each and every allegation contained in Paragraph 130 of the Complaint.

131. Defendants deny each and every allegation contained in Paragraph 131 of the Complaint.

132. Defendants deny each and every allegation contained in Paragraph 132 of the Complaint.

**Count VI – Conversion**

**(against Defendant Novosad)**

133. Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 132 of the Complaint as though fully set forth herein.

134. Defendants deny each and every allegation contained in Paragraph 134 of the Complaint.

135. Defendants deny each and every allegation contained in Paragraph 135 of the Complaint.

136. Defendants deny each and every allegation contained in Paragraph 136 of the Complaint.

137. Defendants deny each and every allegation contained in Paragraph 137 of the Complaint.

138. Defendants deny each and every allegation contained in Paragraph 138 of the Complaint.

**Count VII – Aiding and Abetting Conversion**
**(against Defendant Naanaa)**

139. Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 138 of the Complaint as though fully set forth herein.

140. Defendants deny each and every allegation contained in Paragraph 140 of the Complaint.

141. Defendants deny each and every allegation contained in Paragraph 141 of the Complaint.

142. Defendants deny each and every allegation contained in Paragraph 142 of the Complaint.

143. Defendants deny each and every allegation contained in Paragraph 143 of the Complaint.

144. Defendants deny each and every allegation contained in Paragraph 144 of the Complaint.

**Count VIII – Misappropriation of Trade Secrets, 18 U.S.C. § 1836 et seq. (against Defendant Naanaa)**

145. Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 144 of the Complaint as though fully set forth herein.

146. Defendants deny each and every allegation contained in Paragraph 146 of the Complaint.

147. Defendants deny each and every allegation contained in Paragraph 147 of the Complaint.

148. Defendants deny each and every allegation contained in Paragraph 148 of the Complaint.

149. Defendants deny each and every allegation contained in Paragraph 149 of the Complaint.

150. Defendants deny each and every allegation contained in Paragraph 150 of the Complaint.

151. Defendants deny each and every allegation contained in Paragraph 151 of the Complaint.

152. Defendants deny each and every allegation contained in Paragraph 152 of the Complaint.

153. Defendants deny each and every allegation contained in Paragraph 153 of the Complaint.

154. Defendants deny each and every allegation contained in Paragraph 154 of the Complaint.

155. Defendants deny each and every allegation contained in Paragraph 155 of the Complaint.

156. Defendants deny each and every allegation contained in Paragraph 156 of the Complaint.

157. Defendants deny each and every allegation contained in Paragraph 157 of the Complaint.

158. Defendants deny each and every allegation contained in Paragraph 158 of the Complaint.

159. Defendants deny each and every allegation contained in Paragraph 159 of the Complaint.

160. Defendants deny each and every allegation contained in Paragraph 160 of the Complaint.

161. Defendants deny each and every allegation contained in Paragraph 161 of the Complaint.

162. Defendants deny each and every allegation contained in Paragraph 162 of the Complaint.

163. Defendants deny each and every allegation contained in Paragraph 163 of the Complaint.

164. Defendants deny each and every allegation contained in Paragraph 164 of the Complaint.

165. Defendants deny each and every allegation contained in Paragraph 165 of the Complaint.

166. Defendants deny each and every allegation contained in Paragraph 166 of the Complaint.

167. Answering Paragraph 167 of the Complaint, Defendants state that the statement(s) and/or publication(s) referenced therein speak for themselves, and

Defendants deny any characterization thereof that is inconsistent with their actual content. Defendants deny the remaining allegations contained in Paragraph 167.

168. Answering Paragraph 168 of the Complaint, Defendants state that the statement(s) and/or publication(s) referenced therein speak for themselves, and Defendants deny any characterization thereof that is inconsistent with their actual content. Defendants deny the remaining allegations contained in Paragraph 168.

169. Answering Paragraph 169 of the Complaint, Defendants state that the statement(s) and/or publication(s) referenced therein speak for themselves, and Defendants deny any characterization thereof that is inconsistent with their actual content. Defendants deny the remaining allegations contained in Paragraph 169.

170. Answering Paragraph 170 of the Complaint, Defendants state that the statement(s) and/or publication(s) referenced therein speak for themselves, and Defendants deny any characterization thereof that is inconsistent with their actual content. Defendants deny the remaining allegations contained in Paragraph 170.

171. Answering Paragraph 171 of the Complaint, Defendants state that the statement(s) and/or publication(s) referenced therein speak for themselves, and Defendants deny any characterization thereof that is inconsistent with their actual content. Defendants deny the remaining allegations contained in Paragraph 171.

172. Answering Paragraph 172 of the Complaint, Defendants state that the statement(s) and/or publication(s) referenced therein speak for themselves, and Defendants deny any characterization thereof that is inconsistent with their actual content. Defendants deny the remaining allegations contained in Paragraph 172.

173. Defendants deny each and every allegation contained in Paragraph 173 of the Complaint.

174. Defendants deny each and every allegation contained in Paragraph 174 of the Complaint.

175. Defendants deny each and every allegation contained in Paragraph 175 of the Complaint.

176. Defendants deny each and every allegation contained in Paragraph 176 of the Complaint.

## Count IX – Breach of Fiduciary Duty
## (against Defendant Naanaa)

177. Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 176 of the Complaint as though fully set forth herein.

178. Defendants deny each and every allegation contained in Paragraph 178 of the Complaint.

179. Defendants deny each and every allegation contained in Paragraph 179 of the Complaint.

180. Defendants deny each and every allegation contained in Paragraph 180 of the Complaint.

181. Defendants deny each and every allegation contained in Paragraph 181 of the Complaint.

182. Defendants deny each and every allegation contained in Paragraph 182 of the Complaint.

183. Defendants deny each and every allegation contained in Paragraph 183 of the Complaint.

184. Defendants deny each and every allegation contained in Paragraph 184 of the Complaint.

185. Defendants deny each and every allegation contained in Paragraph 185 of the Complaint.

186. Defendants deny each and every allegation contained in Paragraph 186 of the Complaint.

187. Defendants deny each and every allegation contained in Paragraph 187 of the Complaint.

188. Defendants deny each and every allegation contained in Paragraph 188 of the Complaint.

**Count X – Civil Claim for Violation of Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502 (against Defendant Naanaa)**

189. Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 188 of the Complaint as though fully set forth herein.

190. Defendants deny each and every allegation contained in Paragraph 190 of the Complaint.

191. Defendants deny each and every allegation contained in Paragraph 191 of the Complaint.

192. Defendants deny each and every allegation contained in Paragraph 192 of the Complaint.

193. Defendants deny each and every allegation contained in Paragraph 193 of the Complaint.

194. Defendants deny each and every allegation contained in Paragraph 194 of the Complaint.

195. Defendants deny each and every allegation contained in Paragraph 195 of the Complaint.

196. Defendants deny each and every allegation contained in Paragraph 196 of the Complaint.

197. Defendants deny each and every allegation contained in Paragraph 197 of the Complaint.

198. Defendants deny each and every allegation contained in Paragraph 198 of the Complaint.

199. Defendants deny each and every allegation contained in Paragraph 199 of the Complaint.

200. Defendants deny each and every allegation contained in Paragraph 200 of the Complaint.

201. Defendants deny each and every allegation contained in Paragraph 201 of the Complaint.

## Count XI – Unfair Competition in Violation of Cal. Bus. & Prof. Code § 17200 (against Defendants Naanaa and Novosad)

202. Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 201 of the Complaint as though fully set forth herein.

203. Defendants deny each and every allegation contained in Paragraph 203 of the Complaint.

### Unlawful Acts

204. Defendants deny each and every allegation contained in Paragraph 204 of the Complaint.

205. Defendants deny each and every allegation contained in Paragraph 205 of the Complaint.

206. Defendants deny each and every allegation contained in Paragraph 206 of the Complaint.

207. Defendants deny each and every allegation contained in Paragraph 207 of the Complaint.

208. Defendants deny each and every allegation contained in Paragraph 208 of the Complaint.

209. Defendants deny each and every allegation contained in Paragraph 209 of the Complaint.

210. Defendants deny each and every allegation contained in Paragraph 210 of the Complaint.

211. Defendants deny each and every allegation contained in Paragraph 211 of the Complaint.

212. Defendants deny each and every allegation contained in Paragraph 212 of the Complaint.

213. Defendants deny each and every allegation contained in Paragraph 213 of the Complaint.

214. Defendants deny each and every allegation contained in Paragraph 214 of the Complaint.

215. Defendants deny each and every allegation contained in Paragraph 215 of the Complaint.

216. Defendants deny each and every allegation contained in Paragraph 216 of the Complaint.

217. Defendants deny each and every allegation contained in Paragraph 217 of the Complaint.

218. Defendants deny each and every allegation contained in Paragraph 218 of the Complaint.

**Unfair Acts**

219. Defendants deny each and every allegation contained in Paragraph 219 of the Complaint.

220. Defendants deny each and every allegation contained in Paragraph 220 of the Complaint.

221. Defendants deny each and every allegation contained in Paragraph 221 of the Complaint.

222. Defendants deny each and every allegation contained in Paragraph 222 of the Complaint.

223. Defendants deny each and every allegation contained in Paragraph 223 of the Complaint.

224. Defendants deny each and every allegation contained in Paragraph 224 of the Complaint.

225. Defendants deny each and every allegation contained in Paragraph 225 of the Complaint.

226. Defendants deny each and every allegation contained in Paragraph 226 of the Complaint.

227. Defendants deny each and every allegation contained in Paragraph 227 of the Complaint.

228. Defendants deny each and every allegation contained in Paragraph 228 of the Complaint.

229. Defendants deny each and every allegation contained in Paragraph 229 of the Complaint.

230. Defendants deny each and every allegation contained in Paragraph 230 of the Complaint.

231. Defendants deny each and every allegation contained in Paragraph 231 of the Complaint.

232. Defendants deny each and every allegation contained in Paragraph 232 of the Complaint.

## Count XII – Intentional Interference with Prospective Economic Relations (against Defendants Naanaa and Novosad)

233. Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 232 of the Complaint as though fully set forth herein.

234. Defendants deny each and every allegation contained in Paragraph 234 of the Complaint.

235. Defendants deny each and every allegation contained in Paragraph 235 of the Complaint.

236. Defendants deny each and every allegation contained in Paragraph 236 of the Complaint.

237. Defendants deny each and every allegation contained in Paragraph 237 of the Complaint.

238. Defendants deny each and every allegation contained in Paragraph 238 of the Complaint.

239. Defendants deny each and every allegation contained in Paragraph 239 of the Complaint.

240. Defendants deny each and every allegation contained in Paragraph 240 of the Complaint.

241. Defendants deny each and every allegation contained in Paragraph 241 of the Complaint.

242. Defendants deny each and every allegation contained in Paragraph 242 of the Complaint.

243. Defendants deny each and every allegation contained in Paragraph 243 of the Complaint.

244. Defendants deny each and every allegation contained in Paragraph 244 of the Complaint.

245. Defendants deny each and every allegation contained in Paragraph 245 of the Complaint.

246. Defendants deny each and every allegation contained in Paragraph 246 of the Complaint.

247. Defendants deny each and every allegation contained in Paragraph 247 of the Complaint.

248. Defendants deny each and every allegation contained in Paragraph 248 of the Complaint.

249. Defendants deny each and every allegation contained in Paragraph 249 of the Complaint.

250. Defendants deny each and every allegation contained in Paragraph 250 of the Complaint.

251. Defendants deny each and every allegation contained in Paragraph 251 of the Complaint.

**Count XIII – Intentional Interference with Contractual Relations (against Defendants Naanaa and Novosad)**

252. Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 251 of the Complaint as though fully set forth herein.

253. Defendants deny each and every allegation contained in Paragraph 253 of the Complaint.

254. Defendants deny each and every allegation contained in Paragraph 254 of the Complaint.

255. Defendants deny each and every allegation contained in Paragraph 255 of the Complaint.

256. Defendants deny each and every allegation contained in Paragraph 256 of the Complaint.

257. Defendants deny each and every allegation contained in Paragraph 257 of the Complaint.

258. Defendants deny each and every allegation contained in Paragraph 258 of the Complaint.

259. Defendants deny each and every allegation contained in Paragraph 259 of the Complaint.

260. Defendants deny each and every allegation contained in Paragraph 260 of the Complaint.

261. Defendants deny each and every allegation contained in Paragraph 261 of the Complaint.

262. Defendants deny each and every allegation contained in Paragraph 262 of the Complaint.

263. Defendants deny each and every allegation contained in Paragraph 263 of the Complaint.

264. Defendants deny each and every allegation contained in Paragraph 264 of the Complaint.

265. Defendants deny each and every allegation contained in Paragraph 265 of the Complaint.

266. Defendants deny each and every allegation contained in Paragraph 266 of the Complaint.

267. Defendants deny each and every allegation contained in Paragraph 267 of the Complaint.

## PRAYER FOR RELIEF

Answering the Prayer for Relief, including subparts 1 through 10 thereof, Defendants deny that Plaintiff is entitled to any of the relief requested, or to any relief whatsoever, against Defendants or either of them.

## AFFIRMATIVE DEFENSES

Without admitting any of the allegations of the Complaint, without assuming any burden of proof or persuasion that would otherwise rest with Plaintiff, and reserving the right to assert additional defenses as they become known through discovery or further investigation, Defendants allege the following affirmative and additional defenses:

**FIRST AFFIRMATIVE DEFENSE**

**(Failure to State a Claim)**

268. As a first and separate affirmative defense, Defendants allege that the Complaint, and each purported claim for relief alleged therein, fails to state facts sufficient to constitute a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

269. As a second and separate affirmative defense, Defendants allege that Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands based on Plaintiff's own inequitable conduct.

**THIRD AFFIRMATIVE DEFENSE**

**(Waiver)**

270. As a third and separate affirmative defense, Defendants allege that Plaintiff has waived its right to assert the claims alleged in the Complaint, or some of them, by virtue of its own conduct, acts, and omissions.

**FOURTH AFFIRMATIVE DEFENSE**

**(Estoppel)**

271. As a fourth and separate affirmative defense, Defendants allege that Plaintiff is estopped from asserting the claims alleged in the Complaint, or some of them, by virtue of its own conduct, representations, and admissions.

**FIFTH AFFIRMATIVE DEFENSE**

**(Consent, Authorization, Ratification, and Acquiescence)**

272. As a fifth and separate affirmative defense, Defendants allege that Plaintiff's claims are barred, in whole or in part, because Plaintiff, through its officers, agents, conduct, communications, and course of dealing, expressly or impliedly authorized, consented to, ratified, or acquiesced in some or all of the conduct alleged in the Complaint. This includes, without limitation, Defendant Naanaa's authorized access to Plaintiff's systems, technology, information, and resources in the course of his service as Plaintiff's Chief Technology Officer, as well as conduct undertaken after the parties' separation that Plaintiff authorized, permitted, or to which it acquiesced. Defendants further allege that Plaintiff's conduct and communications created a reasonable belief that Defendants could engage in lawful post-separation competition, subject to any valid and enforceable obligations.

**SIXTH AFFIRMATIVE DEFENSE**

**(License)**

273. As a sixth and separate affirmative defense, Defendants allege that to the extent Defendants used any technology or system covered by the patents-in-suit, such use was authorized, licensed, or otherwise permitted by Plaintiff,

whether expressly or by implication, during and in connection with Defendant Naanaa's employment.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Patent Invalidity and Unenforceability)**

274. As a seventh and separate affirmative defense, Defendants allege that the patents identified in the Complaint, and each claim thereof allegedly infringed, are invalid and/or unenforceable for failure to comply with one or more requirements of Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, and 112.

**EIGHTH AFFIRMATIVE DEFENSE**

**(No Direct or Indirect Infringement)**

275. As an eighth and separate affirmative defense, Defendants allege that Defendants have not infringed, contributed to the infringement of, or induced the infringement of any valid and enforceable claim of the patents-in-suit, and lack the specific intent required to support any claim of induced infringement.

**NINTH AFFIRMATIVE DEFENSE**

**(No Protectable Trade Secret)**

276. As a ninth and separate affirmative defense, Defendants allege that the information Plaintiff alleges to be trade secrets does not constitute a trade secret

under 18 U.S.C. § 1839(3) or any parallel state law because, among other things, it lacks independent economic value, is generally known or readily ascertainable by proper means, and/or Plaintiff failed to take reasonable measures to maintain its secrecy.

**TENTH AFFIRMATIVE DEFENSE**
**(Independent Development and Rightful Possession)**

277. As a tenth and separate affirmative defense, Defendants allege that any information or technology used by Defendants was independently developed, lawfully and rightfully obtained, or acquired through proper means, and was not misappropriated within the meaning of the Defend Trade Secrets Act or any parallel state law.

**ELEVENTH AFFIRMATIVE DEFENSE**
**(Preemption)**

278. As an eleventh and separate affirmative defense, Defendants allege that Plaintiff's common law and statutory claims that are premised on the same nucleus of operative facts as its trade secret misappropriation claim, including but not limited to its conversion, civil conspiracy, breach of fiduciary duty, breach of contract, and unfair competition claims, are preempted or superseded, in whole or

in part, by the Defend Trade Secrets Act and/or the California Uniform Trade Secrets Act.

**TWELFTH AFFIRMATIVE DEFENSE**

**(Performance)**

279. As a twelfth and separate affirmative defense, Defendants allege that Defendant Naanaa performed all material obligations owed to Plaintiff under any contract at issue, or such obligations were excused, waived, or discharged.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(Privilege and Justification)**

280. As a thirteenth and separate affirmative defense, Defendants allege that Defendants' conduct, to the extent it occurred, was privileged and justified as fair competition and was undertaken in the legitimate pursuit of Defendants' own economic interests, without improper means or motive.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(Failure to Mitigate Damages)**

281. As a fourteenth and separate affirmative defense, Defendants allege that Plaintiff failed to take reasonable steps to mitigate its alleged damages, and any recovery against Defendants must be reduced accordingly.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(Comparative Fault of Others)**

282. As a fifteenth and separate affirmative defense, Defendants allege that any damages sustained by Plaintiff, which Defendants deny, were caused in whole or in part by the acts, omissions, or conduct of Plaintiff, its officers, employees, or agents, or of third parties over whom Defendants had no control, and any recovery must be reduced in proportion to the fault attributable to such other persons or entities.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(Offset)**

283. As a sixteenth and separate affirmative defense, Defendants allege that Defendants are entitled to an offset or credit against any recovery by Plaintiff for amounts owed to Defendants, including unpaid wages, unreimbursed expenses, and equity or compensation due to Defendant Naanaa.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(No Protectable Property Interest in User-Owned Content)**

284. As a seventeenth and separate affirmative defense, Defendants allege that Plaintiff lacks any protectable ownership or possessory interest in content, information, profiles, memories, diaries, or other data belonging to individual users

to the extent such users created, owned, controlled, or were entitled to access, export, or transfer that content. Plaintiff therefore cannot recover against Defendants based merely on a user's exercise of the user's own rights to access, export, retain, or transfer that user's content.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

**(Protected Speech; Opinion; No Improper Means)**

285. As an eighteenth and separate affirmative defense, Defendants allege that, to the extent Plaintiff's claims or requested relief are based on statements by Defendant Novosad or others, such claims are barred or limited because the statements constituted protected speech, nonactionable opinion, truthful statements, fair comment, and/or speech on matters of public or consumer concern. Defendants further allege that lawful speech, lawful competition, and the provision of information enabling users to access or export their own content do not constitute independently wrongful conduct or improper means.

Defendants presently have insufficient information to determine whether additional, as yet unstated, affirmative defenses may exist. Defendants reserve the

right to assert additional affirmative defenses as they become known through discovery or further investigation, and to amend this Answer accordingly.

## COUNTERCLAIMS

Counterclaimants Mohammad Naanaa ("Naanaa") and Mariia Novosad, a/k/a Marie Novosad ("Novosad") (together, "Counterclaimants"), by and through their undersigned counsel, allege the following counterclaims against Plaintiff and Counterclaim-Defendant Portal AI, Inc. ("Portal") and Counterclaim-Defendant Volodymyr Panchenko (collectively “Counterclaim-Defendants”), on personal knowledge as to their own acts and, as to all other matters, on information and belief formed after reasonable inquiry:

## NATURE OF THE COUNTERCLAIMS

1. Naanaa co-founded Portal, served as its Chief Technology Officer, and was one of its two directors during the relevant period. The parties' founding relationship broke down, and Naanaa separated from Portal effective May 21, 2026.

2. Portal alleges that Naanaa's post-separation conduct infringed Portal's patents, misappropriated Portal's trade secrets, and interfered with Portal's subscribers. Counterclaimants deny those allegations.

3. Counterclaimants bring these counterclaims to establish the parties' respective rights and to recover for Portal's own conduct. They seek declaratory relief concerning patent non-infringement, non-misappropriation, and user-export rights; damages for Portal's breach of its own Terms of Service and Privacy Policy and for the related invasion of Naanaa's privacy; unpaid and untimely-paid wages owed to Naanaa in violation of California labor law; and Counterclaim-Defendants' violation of the California Comprehensive Computer Data Access and Fraud Act, Penal Code § 502(c).

## THE PARTIES

4. Counterclaimant Naanaa is an individual residing in Santa Monica, California.

5. Counterclaimant Novosad is an individual residing in Santa Monica, California.

6. Counterclaim-Defendant Portal is a corporation organized under the laws of the State of Delaware with a principal place of business in Redwood City, California. Portal is the plaintiff in the above-captioned action.

7. Counterclaim-Defendant Panchenko is an individual residing in Santa Monica, California.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over Counterclaimants' patent-related declaratory-judgment claim under 28 U.S.C. §§ 1331 and 1338(a), because Portal has asserted patent-infringement claims against Counterclaimants concerning 01Labs and the alleged provision of access to Portal's service, and seeks relief based on alleged infringement of identified United States patents.

9. The Court also has federal-question jurisdiction over Counterclaimants' declaratory claim concerning rights arising under the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq., to the extent Portal's operative pleading asserts such rights.

10. The Court has supplemental jurisdiction over Counterclaimants' related state-law claims under 28 U.S.C. § 1367(a). Those claims arise from the same core events as Portal's claims, including the parties' employment and separation, the alleged use or retention of Portal materials, unauthorized access and use of Naanaa’s personal data, subscriber recruitment and export activity, and the parties' competing ventures.

11. An actual and justiciable controversy exists sufficient to support declaratory relief. Portal has sued Counterclaimants, has alleged that they infringe the patents identified in its operative pleading and misappropriated its asserted trade secrets, and has sought emergency injunctive relief directed at the same accused

conduct and products. Counterclaimants dispute those allegations, giving rise to a definite and concrete controversy of sufficient immediacy and reality to warrant a declaratory judgment.

12. Counterclaimants assert these counterclaims as compulsory under Fed. R. Civ. P. 13(a) to the extent they arise out of the same transaction or occurrence as Portal's claims, and, in the alternative, as permissive counterclaims under Rule 13(b) to the extent supported by an independent or supplemental basis for jurisdiction.

13. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these counterclaims occurred in this District, and Portal and Panchenko are subject to personal jurisdiction in this District.

## GENERAL ALLEGATIONS

### A. Naanaa's Background and Role at Portal.

14. Naanaa is a computer scientist. He studied computer science at the Technical University of Munich, has published AI research as a first author, and worked in AI engineering roles at Apple and Amazon, including on the team building Amazon's foundation models, before co-founding Portal with Volodymyr Panchenko ("Panchenko").

15. Naanaa began working with Panchenko on Portal in mid-2023. He served as Portal's Chief Technology Officer and as one of Portal's two directors. Portal's Delaware annual reports through February 2026 list Naanaa as one of the company's two directors.

16. Naanaa's written Employment Agreement, signed June 14, 2024, states that he "will be employed as Chief Technical Officer and Co-Founder," and provided for a salary of $200,000 per year. A copy of the Employment Agreement is attached hereto as **Exhibit 1**.

17. Naanaa is the first-named inventor on all six United States patents Portal asserts in this action. He designed the architecture those patents describe, led the engineers who built it, and personally drafted the patent applications that issued as those patents.

**B. Portal's Products, and Which One the Patents Describe.**

18. Portal's product went through three distinct versions, with two pivots between them, and the distinction matters here.

19. Portal's first product, built in 2023 and 2024, was a multi-agent automation system for small businesses. Its architecture decomposed a user's request into sub-tasks and then selected, ranked, and coordinated multiple specialized "worker agents." That system is what Portal's six patents describe.

20. Portal's second product, built in 2025, was a video storytelling platform that let consumers generate AI videos. It did not use the patented worker-agent architecture.

21. Portal's third product is the subscriber product at issue in this action, Portal One+, which launched publicly in February 2026. Its architecture is different again: each subscriber receives one general-purpose personal AI assistant. The shipped product has no task decomposition, no pool of worker agents, and no ranking or selection of agents.

**C. How Personal-AI-Agent Products Are Built.**

22. A personal-AI-agent product gives a subscriber a personal AI assistant that the subscriber communicates with through ordinary messaging apps such as Telegram or iMessage. The assistant remembers what it learns about the subscriber over time and performs tasks for the subscriber. Portal One+ is one such product, the 01Labs product is another, and many other companies offer similar personal-AI agents.

23. Products in this category share the same three-layer structure. The first layer is the AI models themselves, which are created by AI providers such as Anthropic, OpenAI, and Google and rented for access. Neither Portal nor 01Labs created these models.

24. The second layer is the agent runtime, a free, open-source software that turns an AI model into a persistent assistant, manages the conversation, gives the assistant tools such as reading and writing files, and saves what the assistant learns into plain-text memory files. OpenClaw is one such runtime. Hermes, published by Nous Research, is a competing one. Anyone can download either and read its documentation and code.

25. The third layer is what the company itself builds: sign-up, billing, running one isolated copy of the runtime for each subscriber on cloud servers, connecting each subscriber's assistant to the messaging apps, and customer support. That third layer is the product.

26. Portal One+ is built on the OpenClaw runtime. The 01Labs product is built on the Hermes runtime. OpenClaw and Hermes are competing, independent runtimes. They are alternatives to one another, not components that combine. The two products share no code, no files, and no servers, and the 01Labs product does not use OpenClaw at all.

**D. The Memory Files and Their Public Documentation.**

27. An agent runtime saves the assistant's memory in named plain-text files. The file names come from the runtime's developers and are printed in the runtime's

public documentation and do not come from the companies that build services on top of the runtime.

28. OpenClaw's public documentation names its memory files: USER.md for information about the user, MEMORY.md for long-term memory, and a memory/ folder of dated daily notes. Hermes's public documentation names the same files, USER.md and MEMORY.md, and describes their roles.

29. These runtime memory files begin as empty templates, with their names, purpose, and structure defined by the runtime; each subscriber's own conversations then fill them in. Their existence, names, roles, and layout are printed in public documentation maintained by third parties.

30. Portal did not hide these file names from its subscribers. Portal's published Terms of Service promised every subscriber a full export of the subscriber's data, including memory files, and the Portal One+ service had an export function.

31. The Portal One+ product itself disclosed the file names to subscribers. When a subscriber asked the assistant for an export, the assistant packaged the subscriber's files and sent them in the chat, describing them by name. Portal's own product export message to a subscriber, dated May 23, 2026, names the

MEMORY.md file, the USER.md file, and the memory/ folder, and attaches the subscriber's archive.

**E. Naanaa Independently Built the 01Labs Product After Separation.**

32. Naanaa built the 01Labs product from scratch, after his separation from Portal, on a different technology stack.

33. The timeline is fixed by third-party records. The domain 01labs.ai was a lapsed domain that Naanaa purchased at public auction on May 22, 2026, registered in his own name. Zero One Laboratories, Inc. was incorporated in Delaware on June 1, 2026. The production server the product runs on was created on June 9, 2026, and the website went live on or about June 12, 2026.

34. The 01Labs product is a thin service layer over the publicly available Hermes runtime. Naanaa wrote every line of the 01Labs service code after June 1, 2026. No Portal source code, no Portal files, no Portal configuration, and nothing from the April 23, 2026 archive is in any 01Labs system or was used to build one.

35. The 01Labs product provides one personal assistant per subscriber. It contains no task decomposition, no pool of specialized worker agents, no ranking or selection of agents, and no verification pipeline which are the required elements of the worker-agent architecture that Portal's patents describe.

**F. The "Nexus" Prototype Was Panchenko's Own Personal Project.**

36. Portal alleges that Naanaa extracted Portal's core "Nexus" trade secret. In fact, "Nexus" was Panchenko's own personal memory-retrieval prototype, which he generated for himself in April 2026 using an AI coding tool called Cursor, on his own laptop, built around his own personal data.

37. The prototype's data inventory was overwhelmingly personal: its largest collection held 35,625 entries of people profiles, against 818 entries in the collection Panchenko labeled "PORTAL_CANON." The prototype was never deployed in Portal's commercial product, which had already been serving paying subscribers for two months without it.

38. Panchenko showed the prototype to Naanaa and asked whether it could be integrated into Portal One+. On April 23, 2026, Naanaa asked Panchenko in a written message to send him the code, and Panchenko assembled and sent an archive he himself named "nexus_forhamudi.zip," followed by a voice message asking whether that would be enough "or should [he] package everything."

39. The archive is self-describing. Its own cover note, written by Panchenko before he sent it, calls it an "external read-only copy" and a "sanitized snapshot," states that it was "shared so [Naanaa] can reason about the architecture," and lists

the personal categories Panchenko redacted before sending. The archive bears no confidentiality legends or markings of any kind.

40. Naanaa did not run any unauthorized session on Panchenko's laptop on April 22, 2026 or at any other time, and did not generate or possess any "architectural brief" or "live inventory" of Panchenko's system. The first reference to Nexus in the parties' multi-year message history is Naanaa's written request of April 23, and the only transfer is the archive Panchenko prepared and sent in response.

41. The prototype used standard, publicly documented retrieval techniques, including keyword search with full-text indexing, chunking, and embeddings, that the OpenClaw runtime already shipped as built-in features. Rather than incorporate Panchenko's prototype code, Naanaa enabled the corresponding built-in OpenClaw options in configuration. No part of Nexus is in any 01Labs system.

**G. Naanaa Was a Portal One+ Customer, and Portal's Terms and Privacy Policy Governed His Account.**

42. Separate and apart from his role as an employee, Naanaa was a customer and user of Portal One+ and maintained a personal Portal One+ account. Naanaa registered and used that account for his own personal purposes beginning with the product's public launch on February 13, 2026. The account was tied to Naanaa's

personal Telegram account, which served as its login, and was separate from any Portal administrative or employee system. Naanaa assented to the Terms of Service in the same manner as every other subscriber—by using the Service and by accepting at Stripe checkout when he subscribed—and paid the monthly subscription fee with his own personal credit card. In his personal Portal One+ account Mr. Naanaa entered personal thoughts, plans and information that he intended to be private to him and expected would remain private pursuant to the terms applicable to his Portal One+ account.

43. Portal's Terms of Service were published at portal.ai/terms with a "Last updated" date of March 30, 2026, roughly seven weeks before the May 21, 2026 effective date of Naanaa's termination, and before the account access alleged below. Naanaa drafted those Terms in his capacity as CTO, and Panchenko approved them. Upon currently available information, a copy of the Terms of Service operative at the time is attached as **Exhibit 2**.

44. Section 5 of the Terms of Service ("Your Content") provides that "[y]ou retain ownership of all content you send to Portal (messages, files, images, voice notes, emails). We do not claim any ownership rights over your content."

45. Section 9 of the Terms of Service ("Data Export and Portability") provides: "You may download a full export of your data — including conversation

history, memory files, workspace files, and any content your agent has created — at any time through your account settings page.”

46. Section 2 of the Terms of Service represents that "[e]ach account provides access to a personal AI assistant with isolated memory, workspace," and Section 10 ("Privacy") provides that "[e]ach user has a fully isolated environment — no other user can access your data."

47. Portal's Privacy Policy, in effect during the relevant period, enumerates the purposes for which Portal represented it would use user information: "[t]o provide, maintain, and improve the Portal service"; "[t]o deliver AI-generated responses to your messages"; "[t]o persist your conversation history, memory, and preferences across sessions"; and "[t]o process subscription payments and manage your billing." None of the enumerated purposes authorizes Portal to access, review, or use a user's private account contents to investigate the user, to evaluate the user as a competitor, or to develop or support claims against the user. Upon currently available information, a copy of the Privacy Policy operative at the time is attached as **Exhibit 3**.

48. The Privacy Policy further represents, under the heading "Data Isolation," that "[e]ach user has a fully isolated environment" and that "[n]o other user can access your conversations, files, emails, or preferences." Neither the Terms of

Service nor the Privacy Policy in force during the relevant period authorized Portal, its officers, or its personnel to access, review, or use a user's private account contents for any purpose other than providing the Service the user requested. The provisions on which Portal now relies—a Terms provision permitting Portal to "access, process, or review user data" for stated purposes, and a Privacy Policy purpose of investigating abuse—did not exist in the operative versions; Portal added them later, on or about July 8, 2026, after Panchenko had already accessed Naanaa's account and after Naanaa's termination. The versions Portal has filed as exhibits in this action are those later, post-access versions, not the versions in force when Panchenko accessed Naanaa's account.

50. In direct violation of its own Terms of Service and Mr. Naanaa’s privacy rights, Portal—acting through its chief executive, Panchenko—accessed and copied private data entries from Naanaa's personal Portal One+ account without Naanaa's consent and without any authorization under the Terms of Service or Privacy Policy then in effect, which guaranteed each user a fully isolated environment that no one else could access. Panchenko's own declaration in this action describes his access to Portal's server-side user workspaces and his retrieval of Naanaa's files from an archived backup snapshot. Panchenko admitted the access to Naanaa directly in Telegram voice messages on May 19, 2026, where he told Naanaa that these were

"files I read with great interest this morning" and that he "already ha[d] all the files"], and he reiterated on May 21, 2026 that he had reviewed the contents of Naanaa's account.

**I. Naanaa's Separation and Portal's Delayed Wage Payment.**

51. In early May 2026, Panchenko sent Naanaa to a business event to represent Portal. Naanaa flew on or about May 14, 2026, taking his personal laptop and leaving his company laptop at Portal's office.

52. On May 21, 2026, the parties met for lunch at a restaurant Panchenko chose, and each recorded the conversation on his own device, as the parties had agreed before recording. In that conversation, Naanaa told Panchenko he was stepping down as CTO, and the parties discussed separating. Panchenko acknowledged that after leaving, Naanaa would likely become a competitor of Portal.

53. Naanaa heard nothing further until May 29, 2026, when Portal's human-resources function sent termination paperwork stating that Naanaa was terminated "for cause," retroactively effective May 21, 2026. No specific misconduct was identified in the termination notice. Counterclaimants dispute the "for cause" characterization. The termination paperwork included an Acknowledgment of Receipt and Final Pay, which Naanaa signed on May 29, 2026. That

acknowledgment confirmed only that Naanaa had received the listed documents, notices, wage payment, and wage statement, and it expressly stated that Naanaa's signature "does not constitute agreement with the contents of such documents or a waiver of any rights, claims, or remedies." Portal did not condition payment of Naanaa's wages on his signing the acknowledgment.

54. On the same day May 29, 2026, Portal paid Naanaa his back pay for the previously unpaid months in full, with no offsets or deductions of any kind. Portal did not make that earned salary available on its ordinary payroll schedule; it paid the amount in a lump sum on May 29, 2026, eight days after the discharge it made retroactively effective. Throughout Naanaa's employment, Portal paid his salary semi-monthly through its payroll processor, Rippling, and made its last regular payroll payment on March 3, 2026 for the pay period ending February 28, 2026. Naanaa had agreed only to a one-month deferral of his salary; Portal nonetheless paid him nothing on its regular paydays for the months that followed, and Panchenko acknowledged in Telegram messages to Naanaa on May 19 and May 21, 2026 that Naanaa had not been paid for months. When Portal finally paid, it paid all of Naanaa's wages for the March 1 through May 29, 2026 period as a single lump sum of $49,444.42 in gross wages, wired on May 29, 2026. Because those wages were bunched into one lump-sum payment rather than paid on Portal's regular semi-

monthly schedule, approximately $9,000 more was withheld from Naanaa in taxes than would have been withheld had the wages been paid when due—an over-withholding Naanaa can recover only when he files his next annual tax return.

**COUNT I**

**Declaratory Judgment — Patent Non-Infringement**

*(Naanaa and Novosad against Portal)*

55. Counterclaimants reallege and incorporate by reference paragraphs 1 through 54 as though fully set forth herein.

56. Portal alleges that Counterclaimants infringe six issued United States patents: U.S. Patent Nos. 12,640,924 B2; 12,407,510 B2; 12,395,337 B2; 12,265,856 B1; 12,260,005 B1; and 12,238,213 B1 (the "Portal Patents").

57. Portal alleges direct infringement by Naanaa and Novosad based on the alleged provision of subscriber access to Portal's own service, and induced infringement by Novosad, and further alleges that Naanaa may use the patented technology in connection with 01Labs.

58. The Portal Patents describe Portal's first-generation worker-agent automation system, which decomposes a request into sub-tasks and selects, ranks, and coordinates specialized worker agents.

59. The 01Labs product does not practice that architecture. It provides one personal assistant per subscriber and contains no task decomposition, no pool of worker agents, no ranking or selection of agents, and no verification pipeline.

60. An actual controversy exists concerning whether Counterclaimants have infringed any claim of the Portal Patents. Counterclaimants deny infringement.

61. Counterclaimants are entitled to a declaration that they have not directly infringed, induced infringement of, or contributed to the infringement of any valid, enforceable claim of the Portal Patents that Portal has placed in controversy, whether through the alleged provision of access to Portal's service, or through the development or operation of 01Labs, and that the 01Labs product does not practice any such claim.

**COUNT II**

**Declaratory Judgment — No Misappropriation of the Asserted Trade Secrets**

*(Naanaa against Portal)*

62. Naanaa realleges and incorporates by reference paragraphs 1 through 61 as though fully set forth herein.

63. Portal alleges that Naanaa misappropriated the trade secrets it identifies in its operative pleading, namely: (a) the "Nexus" engine and knowledge base; (b) the Portal One+ non-public workspace-file architecture, including the existence,

names, roles, and layout of the USER.md, MEMORY.md, and memory/ files; and (c) the aggregated, structured subscriber dataset, together with its schema and architecture. Portal further alleges that Naanaa extracted the Nexus on April 22, 2026 and obtained a "clean" archive on April 23, 2026.

64. An actual controversy exists concerning whether Naanaa misappropriated these asserted trade secrets. Naanaa denies that he did.

65. Naanaa did not acquire the "Nexus" prototype by improper means. Nexus was Panchenko's own personal prototype; Panchenko voluntarily assembled and sent Naanaa a self-described "sanitized snapshot" of it, bearing no confidentiality markings, in response to Naanaa's open written request.

66. The 01Labs product was independently developed on the publicly available Hermes runtime and does not incorporate or derive from Portal source code, Portal configurations, Portal files, the April 23, 2026 archive, or the Nexus materials.

67. The file names and conventions Portal identifies including USER.md, MEMORY.md, and the memory/ directory are printed in the public documentation of the OpenClaw and Hermes runtimes and were disclosed to Portal's own subscribers by Portal's product, including in Portal's May 23, 2026 export message.

68. Naanaa is entitled to a declaration that he did not acquire, use, or disclose the specific trade secrets Portal has identified through any improper means, and that the file names and conventions Portal identifies do not qualify as Portal trade secrets to the extent they were publicly documented, incorporated into publicly available runtimes, or disclosed to Portal's users through Portal's own product.

## COUNT III

### Declaratory Judgment — Contractual User-Export Rights (Limited to the Conduct Alleged)

*(Naanaa and Novosad against Portal)*

69. Counterclaimants reallege and incorporate by reference paragraphs 1 through 68 as though fully set forth herein.

70. An actual controversy exists because Portal alleges that Counterclaimants' conduct concerning user-directed exports constituted diversion, conversion, misappropriation, or other unlawful conduct. Counterclaimants seek a declaration concerning the contractual rights Portal itself granted to its users and the legal significance of the specific export activity alleged in Portal's operative pleading.

71. This count is limited to that alleged conduct and does not seek any declaration of the rights of non-party users in the abstract.

72. By its Terms of Service, Portal represented to every subscriber that the subscriber "retain[s] ownership of all content [the subscriber] send[s] to Portal" and "may download a full export of [the subscriber's] data — including conversation history, memory files, workspace files, and any content [the subscriber's] agent has created — at any time."

73. Counterclaimants are entitled to declarations that:

(a) as to the export activity alleged in Portal's operative pleading, a user's export of content that Portal's Terms of Service identified as user-owned or exportable did not, without more, constitute the transfer of Portal source code, credentials, system configurations, or Portal-owned trade secrets to Counterclaimants; and

(b) Portal cannot establish liability against Counterclaimants based solely on a user's exercise of a contractual export or portability right, absent proof that Counterclaimants obtained, used, or disclosed Portal-owned protected information through independently wrongful conduct.

## COUNT IV

**Breach of Contract — Portal One+ Terms of Service and Privacy Policy**

*(Naanaa against Portal)*

74. Naanaa realleges and incorporates by reference paragraphs 1 through 73 as though fully set forth herein.

75. Naanaa entered into a user-service contract with Portal governing his personal Portal One+ account, consisting of Portal's Terms of Service and the incorporated Privacy Policy. The operative Terms of Service bore a "Last updated" date of March 30, 2026, before the account access alleged above. Naanaa assented to those Terms as a user—separately from his role in drafting them—in the same manner as every other subscriber: by using the Service beginning at its February 13, 2026 public launch and by accepting Portal's Terms at Stripe checkout when he subscribed.

76. Naanaa performed all conditions and obligations required of him under the contract, except those excused or prevented by Portal.

77. Under Section 5 of the Terms of Service, Portal promised that Naanaa "retain[ed] ownership of all content [he sent] to Portal" and that Portal "d[id] not claim any ownership rights over [his] content." Under Section 2, Portal represented

that his account provided "a personal AI assistant with isolated memory, workspace."

78. Under Section 10 of the Terms of Service and the incorporated Privacy Policy, Portal promised that "[e]ach user has a fully isolated environment," and under Section 5 that a user's content is "stored to provide the Service." The Privacy Policy, in turn, limited Portal's use of user information to a closed list of service purposes—providing, maintaining, and improving the service, delivering AI responses, persisting conversation history, memory, and preferences, sending and receiving the user's agent email, executing the user's scheduled tasks, processing the user's payments, and tracking usage—none of which authorized Portal to access or use a user's private content to investigate the user.

79. Portal breached these contractual commitments by accessing the contents of Naanaa's personal account and using that content to investigate and purport to terminate him for cause and other purposes outside the closed set the Privacy Policy authorized and outside the account isolation the Terms of Service guaranteed.

80. As a direct and foreseeable result of Portal's breach, Naanaa suffered the loss of the benefit of the contractual privacy and account-isolation promises and other legally recoverable damages, including economic and privacy-related injury, in an amount to be proven at trial.

## COUNT V

### Invasion of Privacy — California Constitutional Right to Privacy and Intrusion Upon Seclusion

*(Naanaa against Portal)*

81. Naanaa realleges and incorporates by reference paragraphs 1 through 80 as though fully set forth herein.

82. Naanaa's personal Portal One+ account was a customer account used for personal purposes, separate and distinct from his role as an employee. Through that account, Naanaa generated and stored intensely personal material by means of Portal's "memory" system, including personal thoughts, planning, and communications.

83. Naanaa had a legally protected privacy interest in the private contents of his personal account. He had a reasonable expectation of privacy in those contents, which Portal itself created and reinforced by representing that each account had "isolated memory, workspace"; that the user retained ownership of the content; and that Portal would "access, process, or review user data only for the limited purposes described in the Privacy Policy."

84. Portal seriously invaded that privacy interest, and intentionally intruded into Naanaa's private affairs, by accessing or extracting the private contents of his

personal account, beyond any consented service purpose, and using them against him.

85. Portal's conduct was not limited to receiving information Naanaa voluntarily disclosed in discovery or to reviewing publicly available information. On information and belief, Portal accessed or extracted the contents of Naanaa's separately maintained personal account, without his consent and outside the purposes disclosed in the operative Terms and Privacy Policy.

86. The intrusion would be highly offensive to a reasonable person, considering the private and personal nature of the material, the isolation and access limitations Portal had promised, Portal's motive in the parties' founder dispute, and the extent of the intrusion.

87. As a direct and proximate result, Naanaa suffered injury, including economic, reputational, and emotional harm, in an amount to be proven at trial.

## COUNT VI

### Breach of Written Employment Agreement — Untimely Payment of Salary

*(Naanaa against Portal)*

88. Naanaa realleges and incorporates by reference paragraphs 1 through 87 as though fully set forth herein.

89. The Employment Agreement is a valid and enforceable written contract under which Portal agreed to pay Naanaa a salary of $200,000 per year, payable in equal biweekly amounts accordance with Portal's usual payroll practices and schedule. Naanaa performed the services required of him.

90. Portal breached the Employment Agreement by failing to pay Naanaa's earned salary for the previously unpaid months on the scheduled paydays established by Portal's payroll practice, and instead delaying payment until May 29, 2026, when it paid the back pay in a lump sum together with its "for cause" termination and cease-and-desist correspondence.

91. As a direct and proximate result, Naanaa was damaged, including by the loss of the timely use of his earned wages, and is entitled to any wages that remain unpaid, together with interest and other contractual damages, in an amount to be proven at trial. Naanaa does not seek to recover any salary principal that has in fact been paid.

## COUNT VII

## Violation of the California Labor Code — Untimely Payment of Wages and Waiting-Time Penalties

*(Naanaa against Portal)*

92. Naanaa realleges and incorporates by reference paragraphs 1 through 91 as though fully set forth herein.

93. Portal made Naanaa's discharge retroactively effective May 21, 2026, but did not pay his earned and unpaid wages until May 29, 2026.

94. By failing to pay all earned and unpaid wages immediately upon discharge, Portal violated Cal. Lab. Code § 201.

95. Portal's failure to timely pay Naanaa's wages was willful, and Portal is therefore liable for waiting-time penalties under Cal. Lab. Code § 203.

96. Portal also failed to pay Naanaa's earned salary for one or more regular paydays during his employment in violation of California Labor Code section 204.

97. To the extent Portal knowingly and intentionally furnished a wage statement that inaccurately stated a required item, including that Naanaa’s regular biweekly salary was $49,444.42, and that inaccuracy caused Naanaa injury because Naanaa had an additional $9,000 in federal and state taxes withheld based on this

inaccurate salary information, Portal is liable under California Labor Code section 226.

98. As a result of Portal's violations, Naanaa is entitled to his unpaid wages, waiting-time penalties under section 203, any penalties available under sections 204 and 226 if supported, interest, and attorneys' fees and costs to the extent authorized by applicable law, including California Labor Code section 218.5.

## COUNT VIII

### Violation of California Comprehensive Computer Data Access and Fraud Act, Penal Code § 502(c)

*(Naanaa against Portal and Panchenko)*

99. Naanaa incorporates paragraphs 1 through 98 as though fully set forth herein.

100. Naanaa's private AI-agent communications in his Portal One+ account constitute computer "data" within the meaning of Penal Code § 502.

101. Naanaa lawfully created and supplied the data for storage and processing through the Portal One+ service.

102. Naanaa granted Counterclaim-Defendant Portal limited permission to access and process the data for purposes authorized under the Agreement and reasonably necessary to provide the Portal One + service requested by Naanaa.

103. Naanaa did not grant permission for Counterclaim-Defendant Portal or its personnel, including Counterclaim-Defendant Panchenko, to retrieve Naanaa's private data in order to:

a. investigate Naanaa's private thoughts or plans concerning his employment at Portal;

b. investigate Naanaa as a potential competitor;

c. obtain Naanaa's confidential business plans;

d. identify information useful in asserting claims against Naanaa;

e. obtain strategic leverage against Naanaa, including but not limited to purporting to justify retroactive termination of Naanaa's employment for cause; or

f. use Naanaa's data for any other purpose expressly or impliedly excluded by the Agreement.

104. Counterclaim-Defendants Portal and Panchenko nevertheless knowingly accessed Naanaa's data.

105. On information and belief, the challenged conduct included one or more of the following actions: opening the stored conversation; querying Naanaa's account; using administrative credentials to retrieve private data entries; searching a database containing subscriber content; copying or exporting private entries;

running a targeted search or classifier against private subscriber data; and other technical conduct.

106. Counterclaim-Defendants Portal and Panchenko thereafter knowingly took, copied, downloaded, extracted, summarized, transferred, and made use of Naanaa's private data.

107. The challenged access and use were not accidental or incidental technical processing associated with providing Naanaa's personal Portal One+ service.

108. The purpose of the challenged access was materially different from the purpose for which Naanaa granted permission to process the data.

109. Counterclaim-Defendants Portal and Panchenko knowingly accessed and without permission used Portal's data, computers, computer systems, and computer networks to wrongfully obtain Naanaa's private data entries in his Portal One+ account, in violation of CA Penal Code §502(c)(1).

110. Counterclaim-Defendants Portal and Panchenko knowingly accessed and without permission took, copied, and/or made use of Naanaa's private data entries in his Portal One+ account from a Portal computer, computer system, or computer network, in violation of CA Penal Code §502(c)(2).

111. The conduct alleged under this cause of action was not reasonably necessary to the performance of any legitimate work assignment requiring provision, maintenance, security, or operation of Naanaa's personal AI service.

112. As a direct and proximate result of Counterclaim-Defendants' unauthorized access and use of Naanaa's data, Naanaa suffered damage or loss within the meaning of Penal Code § 502(e). Among other things, Naanaa has been required to expend substantial time and technical effort of approximately 25-30 hours investigating the nature, mechanism, scope, and consequences of Counterclaim-Defendants' conduct, including a May 2026 audit, confirming that his private account had been accessed, and a full export of his account data and evidence review in July 2026.

113. Naanaa is a computer scientist with technical expertise relevant to investigating computer systems, account access, data processing, and related matters. Following discovery of Counterclaim-Defendants' unauthorized conduct, Naanaa personally performed technical investigative work of the type for which an individual or business would ordinarily retain a computer or digital-forensics professional.

114. Naanaa's technical investigation was reasonably and necessarily undertaken in response to Counterclaim-Defendants' unauthorized access and for

the purpose of determining the nature and effect of that access and protecting Naanaa's data from further unauthorized use.

115. Naanaa thereby suffered loss consisting of, among other things, the expenditure of substantial professional and technical time that Naanaa otherwise could have devoted to productive personal and professional activities. The reasonable value of the technical services Naanaa was required to perform is an amount according to proof.

116. Independently of the monetary valuation ultimately placed upon Naanaa's professional time, Naanaa's actual expenditure of time investigating the unauthorized computer access constitutes cognizable damage or loss under Penal Code § 502(e)(1).

117. Naanaa seeks compensatory damages pursuant to Penal Code §502(e)(1).

118. Naanaa further seeks injunctive and other equitable relief available under § 502(e)(1), including relief prohibiting further access to or use of Naanaa's private data outside the permission granted by Naanaa.

119. Naanaa seeks reasonable attorneys' fees as authorized by Penal Code §502(e)(2).

120. Counterclaim-Defendants' conduct was willful.

121. Upon proof satisfying the statutory requirements, including clear and convincing proof of oppression, fraud, or malice where required, Naanaa seeks punitive or exemplary damages permitted under Penal Code § 502(e)(4).

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimants respectfully request that the Court enter judgment in their favor and against Portal (and, on Count VIII, against Volodymyr Panchenko) as follows:

A. On Count I, a declaration that Counterclaimants have not directly infringed, induced infringement of, or contributed to the infringement of any valid, enforceable claim of the Portal Patents placed in controversy, whether through the alleged provision of access to Portal's service or through the development or operation of 01Labs;

B. On Count II, a declaration that Naanaa did not misappropriate the specific trade secrets Portal has identified, and that the file names and conventions Portal identifies are not Portal trade secrets to the extent publicly documented, incorporated into publicly available runtimes, or disclosed to users through Portal's own product;

C. On Count III, a declaration, limited to the export activity alleged by Portal, that a user's export of user-owned or exportable content did not without more transfer Portal-owned protected information to Counterclaimants, and that Portal cannot establish liability based solely on a user's exercise of an export right absent independently wrongful conduct by Counterclaimants;

D. On Count IV, and in the alternative on Count V, compensatory damages according to proof and nominal damages in the alternative, with emotional-distress damages sought under Count V only;

E. On Count VI, contract damages according to proof, including any unpaid wages and interest, without seeking any salary principal already paid;

F. On Count VII, unpaid wages, waiting-time penalties under Labor Code section 203, any penalties available under sections 204 and 226 if supported, interest, and attorneys' fees and costs to the extent authorized by applicable law;

G. On Count VIII, enter judgment in favor of Naanaa and against Portal and Volodymyr Panchenko, jointly and severally to the extent permitted by law, and award:

a. compensatory damages under California Penal Code § 502(e)(1) in an amount according to proof for Naanaa’s actual damage or loss caused by the alleged unauthorized access, copying, extraction, or use of his private

Portal One+ account data, including reasonable and necessary technical-investigation, forensic, preservation, remediation, and mitigation expenses, and the reasonable value of technical services personally performed in response to the alleged unauthorized access, to the extent recoverable and proven;

b. preliminary and permanent injunctive relief prohibiting Portal, Panchenko, and persons acting in concert with either of them from accessing, retrieving, copying, extracting, using, disclosing, disseminating, or otherwise exploiting the contents of Naanaa's private Portal One+ account except as authorized by Naanaa or by further order of the Court;

c. equitable relief requiring Portal and Panchenko to return, delete, or permanently disable any unauthorized copies, extracts, summaries, or derivative compilations of Naanaa's private account data, subject to any preservation obligations imposed by law, agreement, or Court order;

d. reasonable attorneys' fees incurred in prosecuting Count VIII pursuant to California Penal Code § 502(e)(2), together with recoverable costs of suit;

e. exemplary or punitive damages to the extent authorized by California Penal Code § 502(e)(4) and supported by the evidence; and

f. any other legal or equitable relief available under California Penal Code § 502;

H. Prejudgment and post-judgment interest as permitted by law;

I. Costs of suit and attorneys' fees to the extent authorized by contract or statute; and

J. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Counterclaimants demand a trial by jury on all issues so triable.

Dated: September 14, 2026

*/s/ Edwin H. Wheeler*

Edwin H.Wheeler (Bar No. 189991)
Michael B. Marion (pro hac vice forthcoming)
**Intelink Law Group, P.C.**
23 Corporate Plaza Drive, Suite 150
Newport Beach, CA 92660
(866) 786-4036
ewheeler@intelinklaw.com
mmarion@intelinklaw.com

Attorneys for Defendants
MOHAMMAD NAANAA and
MARIIA NOVOSAD